IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CARLOS RODRIGUEZ,

        Plaintiff(s),

                              CIVIL ACTION

v.                              CASE NO: _____

EVANSTON INSURANCE COMPANY,

        Defendant(s).

_____/

## NOTICE OF REMOVAL

TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION:

      Defendant, EVANSTON INSURANCE COMPANY ("Defendant"), by and through its undersigned counsel and pursuant to 28 U.S.C. §§1332, 1441 and 1446, gives notice of removal of the above-captioned action, Case Number 2021-007464-CA-01, pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, and hereby removes this action to the United States District Court for the Southern District of Florida – Miami Division. In support of this Notice of Removal, Defendant states as follows:

1.     On or about March 26, 2021, Plaintiff, CARLOS RODRIGUEZ (hereinafter "Plaintiff"), filed a Summons and Complaint styled as *CARLOS RODRIGUEZ v. EVANSTON INSURANCE COMPANY*, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, bearing Case Number 2021-007464-CA-01. *See* Complaint, attached hereto as **Exhibit 1**.

2.    EVANSTON INSURANCE COMPANY, the sole defendant named in the Complaint was served with Plaintiff's Summons and Complaint on or about April 14, 2021.  *See* Notice of Service of Process, attached hereto as **Exhibit 2**.

3.    The United States District Court for the Southern District of Florida is the Court embracing the place wherein such action is pending in state court.

4.    This removal is effected and has been timely filed within one year after commencement of the action and within 30 days after Defendant received service of Plaintiff's Summons and Complaint.

5.    This Court has jurisdiction over this matter and it is properly removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

6.    Pursuant to 28 U.S.C. § 1446 (a), a copy of all pleadings filed in the record of the State Court action are attached hereto along with a copy of the docket as **Composite Exhibit 3**.

7.    For the purposes of diversity of citizenship under 28 U.S.C. § 1332(c)(2), Plaintiff is a citizen of the State of Florida, domiciled in Miami-Dade County, Florida.  *See* Property Record – 30-5921-007-4100 for the property address of 14572 SW 142 Ter, Miami, FL 33186, from the Miami-Dade County Property Appraiser's website, noting Plaintiff, CARLOS RODRIGUEZ, as the owner, and an exemption for homestead, attached hereto as **Exhibit 4**.

8.    Defendant is an Illinois corporation, maintains its principal place of business in Deerfield, Illinois and, thus, is not a citizen of Florida.

9.    This action is properly removed to this Court pursuant to 28 U.S.C. §§ 1332 and 1441, in that all properly joined and served parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.    Plaintiff alleges that Defendant issued insurance Policy Number MKH00001221-00 (the "Policy") to the Plaintiff to insure certain real property located at 14572 SW 142nd Terrace, Miami, FL 33186 (the "Property"). *(Plaintiff's Complaint at ¶ 6, 8).*

11.    Plaintiff alleges that Defendant breached the Policy of insurance: "…Defendant has breached the Policy by underpaying the Plaintiff for said loss and/or failing to provide full payment of benefits due and owing…" *(Plaintiff's Complaint* at *¶ 22).*

12.    Beyond the allegations in Plaintiff's Complaint, Defendant further bases its belief that the amount in controversy exceeds $75,000.00 based on the Full Pro Restoration estimate Plaintiff provided to Defendant in support of his alleged damages, which totals $88,977.86. This correspondence is attached hereto as **Exhibit 5**.

13.    Accordingly, it appears a reasonable probability that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See*, *Kotchman v. State Farm Mut. Auto. Ins. Co.*, 2015 U.S. Dist. LEXIS 153918 (M.D. Fla. 2015) (district courts are permitted to make "reasonable deductions" and "reasonable inferences" in determining whether the case meets federal jurisdictional requirements).

14.    The facts related to the federal court's jurisdiction over this matter were true at the time Plaintiff filed his Complaint, and are true presently.

15.    Pursuant to 28 U.S.C. § 1446(d), Plaintiff is being provided with a copy of this Notice of Removal and a copy of this Notice of Removal is being filed with the Clerk of the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

16.    Pursuant to Rule 11 of the Federal Rules of Civil Procedure, undersigned counsel hereby certify that they have read the foregoing Notice of Removal, that to the best of their knowledge, information, and belief formed after reasonable inquiry, it is well-grounded in

fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose.

17. By filing this Notice of Removal, Defendant does not waive, and hereby reserves all defenses and objections to the Plaintiff's Summons and Complaint including, but not limited to, failure to state a claim, lack of personal jurisdiction, improper venue and/or insufficiency of service of process.

**WHEREFORE**, the Defendant, EVANSTON INSURANCE COMPANY, respectfully requests that the above-referenced action pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 2021-007464-CA-01, be removed from that court to the United States District Court for the Southern District of Florida – Miami Division. This Court has jurisdiction over the dispute because all properly joined parties are completely diverse and the jurisdictional amount has been met.

Respectfully dated this 10th day of May, 2021.

ZINOBER DIANA & MONTEVERDE, P.A.

*Michael J. Rivero*

_____
**Michael J. Rivero, Esquire (FBN: 085326)**
**E-mail:  MRivero@zinoberdiana.com**
**E-mail:  Mscott@zinoberdiana.com**
150 Second Ave. N, Suite 1170
St. Petersburg, FL 33701
Phone: 727-498-2244
Fax:    727-498-8902
Attorney for Defendant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing pleading was sent by electronic mail on this 10th day of May, 2021, to Counsel for Plaintiff(s) listed below:

Erika L. Pardo, Esquire (FBN: 098719)
THE PARDO LAW FIRM, P.A.
7700 N. Kendall Drive, Suite 802
Miami, FL 33156
Phone: 305-421-6391
Fax:    305-909-7437
Email: Erika@thepardolawfirm.com
Email: Eservice@thepardolawfirm.com
Attorneys for Plaintiff(s)


**ZINOBER DIANA & MONTEVERDE, P.A.**

*Michael J. Rivero*

_____
**Michael J. Rivero, Esquire (FBN: 085326)**
**E-mail:  MRivero@zinoberdiana.com**
**E-mail:  Mscott@zinoberdiana.com**
150 Second Ave. N, Suite 1170
St. Petersburg, FL 33701
Phone: 727-498-2244
Fax:    727-498-8902
Attorney for Defendant

Case 1:21-cv-21774-DPG   Document 1   Entered on FLSD Docket 05/11/2021   Page 6 of 101

# EXHIBIT 1

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CASE NO.:

CARLOS RODRIGUEZ,

      Plaintiff,

vs.


EVANSTON INSURANCE
COMPANY,

      Defendant.

_____/

## COMPLAINT

COMES NOW the Plaintiff, CARLOS RODRIGUEZ, by and through the undersigned counsel and hereby sue the Defendant, EVANSTON INSURANCE COMPANY, and as grounds therefore states as follows:

1.  This is an action for damages not exceeding Thirty Thousand Dollars ($30,000.00), exclusive of interest, costs and attorney's fees, and is otherwise within the jurisdictional limits of this Court.

2.  The Plaintiff is an individual who at all times material hereto was a resident of Miami-Dade County, Florida and are otherwise *sui juris*.

3.  The Defendant is a Florida corporation, organized and existing under the laws of Florida, authorized to do business in Florida and conducting business in Miami-Dade County.

4.  Venue is proper in Miami-Dade County, Florida because the contract which forms the subject matter of this lawsuit, was executed in Miami-Dade County, Florida and the subject property which forms the subject matter of this lawsuit, is located in Miami-Dade County, Florida.

5.   Plaintiff purchased a homeowners' insurance policy from the Defendant, Policy No. MKH00001221-00 (hereinafter the "Policy"). See Homeowners Policy Declarations attached hereto as **Exhibit "A"**.

6.   Plaintiff has paid all premiums due and owing under said Policy and the Policy was in full force and effect at all relevant times herein.

7.   Pursuant to the terms of the Policy, the Defendant agreed to provide insurance coverage to the Plaintiff's property located at 14572 SW 142nd Terrace, Miami, FL 33186 (the "Property").

8.   On or about November 9, 2020, Plaintiff suffered a covered loss as a result of tropical storm Eta causing direct, physical loss to the property due to wind and water damage (hereinafter the "loss").

9.   The damage is sudden and accidental and therefore a covered peril under the Policy.

10. Plaintiff timely notified Defendant of said loss and submitted a claim seeking coverage and insurance benefits under the Policy.

11. Defendant assigned claim number 20C7682 to the loss and investigated the claim.

12. The Plaintiff protected the Property from further damage, provided Defendant access to the Property and an opportunity to fully inspect the loss, and otherwise fully cooperated in the investigation of the claim and have performed all post-loss obligations to the best of their ability to recover under the Policy and/or said conditions have been waived by the Defendant.

13. Defendant agreed that the Plaintiff sustained a covered loss.

14. On or about January 25, 2021, the Defendant acknowledged coverage for the loss and issued a payment to Plaintiff based on its unilateral valuation, less the applicable deductible.

15. However, the damages to the Property as a result of said loss exceed Defendant's valuation and payments; as such, the Defendant has failed to fully pay for the Plaintiff's damages that are covered under the Policy.

16. All conditions precedent to obtaining payment of benefits under the Policy from the Defendant have been met, complied with, or otherwise waived.

## <u>COUNT I - BREACH OF CONTRACT</u>

Plaintiff re-allege paragraphs 1 through 16 above as if fully set forth herein.

17. This is an action against the Defendant for breach of contract for the Policy issued by Defendant to Plaintiff.

18. The Policy provides coverage for direct, physical loss to the Property as a result of the loss mentioned herein.

19. Defendant has a contractual and legal obligation to pay for damages incurred as a result of covered losses under the Policy and the Defendant owed a duty to the Plaintiff to fully compensate the Plaintiff for the covered loss.

20. The Defendant has breached the Policy by underpaying the Plaintiff for said loss and/or failing to provide full payment of benefits due and owing to Plaintiff under the Policy.

21. The Defendant has failed or refused to pay for all damages sustained by Plaintiff as a result the loss and Plaintiff has therefore sustained unpaid damages that are a covered loss under the Policy.

22. Plaintiff has been damaged by the Defendant failing to pay the full amount of said benefits available to the Plaintiff under the Policy.

23. Defendant's failure to pay the full amount of insurance proceeds due in Plaintiff's claim is contrary to the terms of the Policy.

24. Under the terms of the Policy, Defendant is liable to Plaintiff for the total amount of the loss, within the Policy limits of liability, less any applicable deductible.

25. As a result of the foregoing, Defendant has materially breached the Policy.

26. The Plaintiff has been obligated to retain the services of the undersigned attorney and are responsible for paying reasonable fees and costs for the services of the undersigned.  Plaintiff is entitled to recover attorney's fees and costs pursuant to Florida Statute §627.428.

WHEREFORE, the Plaintiff, CARLOS RODRIGUEZ, demand judgment against the Defendant, EVANSTON INSURANCE COMPANY, for all damages, interest allowed by law, costs and attorney's fees pursuant to §627.428 of the Florida Statutes, and any further relief this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

**THE PARDO LAW FIRM, P.A.**
*Attorney for Plaintiff*
7700 N. Kendall Drive, Suite 802
Miami, FL 33156
Tel: (305) 421-6391
Fax: (305) 909-7437
Erika@thepardolawfirm.com
Eservice@thepardolawfirm.com

By:     /s/ Erika L. Pardo
        Erika L. Pardo, Esq.
        Florida Bar No. 98719

# **EXHIBIT "A"**

**Policy Number: MKH00001221-00**

Evanston Insurance Company
# (HO-3) Homeowner Declaration

**MARKEL**

| Proposed Policy Term: 12 Months | Effective: 3/5/2020 | Expiration: 3/5/2021 |
|---|---|---|

| | |
|---|---|
| **Insured Name and Mailing Address**<br>CARLOS RODRIGUEZ<br>14572 SW 142 TER<br><br>Miami, FL 33186 | **Broker Name and Address**<br>SEBANDA INSURANCE CORP \ ANNET PASCUAL<br>6401 SW 40 ST<br>Miami, FL 33155<br>Email: annet@sebandainsurance.com   Phone:<br>3056650016 |

The Residence premise covered by this policy is located at the above address, unless otherwise stated:
14572 SW 142 Ter, Miami, FL 33186

Insurance is provided only with respect to the following Coverage(s) for which a Limit is shown and then subject to all conditions of this policy.

| Policy Coverages | Policy Limits | Policy Premiums | |
|---|---|---|---|
| A – Dwelling | $200,000 | Base Premium | $2,784.00 |
| B – Other Structures | $0 | | |
| C – Personal Property | $10,000 | | |
| D – Loss of Use | $10,000 | Fees | $250.00 |
| E – Personal Liability | $100,000 | Taxes | $156.73 |
| F – Medical Payments to others | $1,000 | **TOTAL DUE** | $3,190.73 |
| **Policy Deductibles:** | | | |
| (AOP) All Other Perils | $2,500 | | |
| Wind/Hail | 3% | | |
| Water | AOP | | |
| Theft | AOP | | |

**Optional Coverages:**

| | | | | | |
|---|---|---|---|---|---|
| Extended Replacement Cost | No | Personal Injury | No | Loss Assessment | $1,000 |
| Replacement Cost Cov C | Yes | Identity Restoration Expense | No | Limited Mold | No |
| Water Backup | No | Equipment Breakdown | Yes - $250 DED | Increased Limits on Business Property | No |
| Golf Cart Coverage | No | Animal Liability | No | Increased Ordinance | 10% |
| Roof Loss Settlement | See Policy | Water Damage Limitation | Yes | Personal Property Special Perils | No |

| | |
|---|---|
| **First Mortgagee**<br>REGIONS MORTGAGE<br>PO BOX 18001<br>HATTIESBURG, MS 39404<br>Clause:<br>Loan Number: 3297109967 | **Agent Name and Mailing Address**<br>Appalachian Underwriters, Inc<br>800 Oak Ridge Turnpike<br>Suite A-1000<br>Oak Ridge, TN 37830<br>Phone: 888-376-9633, opt 4 |


XPRESS HOMEOWNERS
APPALACHIAN UNDERWRITERS, INC.

**Forms and Endorsements made part of this policy at the time of issuance:**
MPLH0154-0118, MPLCLAIMNOTICE-0715, MPLH0103-0117, Homeowners Declarations, HO 00 03 05 11, HO 23 86 05 13, MPLH0232-0716, HO 04 10 10 00, MPLH0125-0715, MPLH0152-0715, MPLH0100-0715, MPLH0112-0715, MPLH0113-0715, MPLH0115-0715, MPLH0120-0715, MPLH0122-0715, MPLH0123-0715, MPLH0132-0715, MPLH0133-0715, MIL 1214 09 07, MPLH0126-0216, MPLH0153-0316, HO 04 35 05 11, HO 04 77 10 00, MPLH0520-0519, MPLH0118-0715, MPLH0508-0519, MPLH0509-0519, MPLH0511-0519, MPLH0512-0519, MPLH0523-0519, MPLH0507-0519

This insurance is issued pursuant to the
Florida surplus lines law. Persons insured
by surplus lines carriers do not have the
protection of the Florida Insurance Guaranty
Act to the extent of any right of recovery for
the obligation of an insolvent unlicensed
insurer.

NO FLAT
CANCELLATIONS

Steven Molyy Clawland

# HOMEOWNERS 3 – SPECIAL FORM

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

**a.** Liability for "bodily injury" or "property damage" arising out of the:

**(1)** Ownership of such vehicle or craft by an "insured";

**(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

**(3)** Entrustment of such vehicle or craft by an "insured" to any person;

**(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

**(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

**b.** For the purpose of this definition:

**(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

**(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

**(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

**a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

**b.** Any other activity engaged in for money or other compensation, except the following:

**(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

**(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

**a.** You and residents of your household who are:

**(1)** Your relatives; or

**(2)** Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

**b.** A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

**(1)** 24 and your relative; or

**(2)** 21 and in your care or the care of a resident of your household who is your relative; or

**c.** Under Section **II:**

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in **5.a.** or **b.** "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to a "motor vehicle" to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person described in **5.a.** or **b.;** or

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence; and

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

**a.** A self-propelled land or amphibious vehicle; or

**b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

**a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

**b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means:

**a.** The one-family dwelling where you reside;

**b.** The two-, three- or four-family dwelling where you reside in at least one of the family units; or

**c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

**1.** We cover:

    **a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

    **b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

**2.** We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

**1.** We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

**2.** We do not cover:

    **a.** Land, including land on which the other structures are located;

    **b.** Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

    **c.** Other structures from which any "business" is conducted; or

    **d.** Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

**3.** The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A.** Use of this coverage does not reduce the Coverage **A** limit of liability.

### C. Coverage C – Personal Property

#### 1. Covered Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

    **a.** Others while the property is on the part of the "residence premises" occupied by an "insured"; or

    **b.** A guest or a "residence employee", while the property is in any residence occupied by an "insured".

#### 2. Limit For Property At Other Locations

##### a. Other Residences

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

    **(1)** Moved from the "residence premises" because it is:

        **(a)** Being repaired, renovated or rebuilt; and

        **(b)** Not fit to live in or store property in; or

    **(2)** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

##### b. Self-storage Facilities

Our limit of liability for personal property owned or used by an "insured" and located in a self-storage facility is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

    **(1)** Moved from the "residence premises" because it is:

        **(a)** Being repaired, renovated or rebuilt; and

        **(b)** Not fit to live in or store property in; or

    **(2)** Usually located in an "insured's" residence, other than the "residence premises".

### 3. Special Limits Of Liability

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

**a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

**b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

**c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

**e.** $1,500 on loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**f.** $2,500 for loss by theft of firearms and related equipment.

**g.** $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

**h.** $2,500 on property, on the "residence premises", used primarily for "business" purposes.

**i.** $1,500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to antennas, tapes, wires, records, disks or other media that are:

**(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

**(2)** In or upon a "motor vehicle".

**j.** $1,500 on portable electronic equipment that:

**(1)** Reproduces, receives or transmits audio, visual or data signals;

**(2)** Is designed to be operated by more than one power source, one of which is a "motor vehicle's" electrical system; and

**(3)** Is in or upon a "motor vehicle".

**k.** $250 for antennas, tapes, wires, records, disks or other media that are:

**(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

**(2)** In or upon a "motor vehicle".

### 4. Property Not Covered

We do not cover:

**a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles".

This includes a "motor vehicle's" equipment and parts. However, this Paragraph **4.c.** does not apply to:

**(1)** Portable electronic equipment that:

**(a)** Reproduces, receives or transmits audio, visual or data signals; and

**(b)** Is designed so that it may be operated from a power source other than a "motor vehicle's" electrical system.

**(2)** "Motor vehicles" not required to be registered for use on public roads or property which are:

**(a)** Used solely to service a residence; or

**(b)** Designed to assist the handicapped;

**d.** Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

**e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**f.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

 © Insurance Services Office, Inc., 2010 **HO 00 03 05 11**

**g.** Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section **I** – Property Coverages;

**h.** Property rented or held for rental to others off the "residence premises";

**i.** "Business" data, including such data stored in:

**(1)** Books of account, drawings or other paper records; or

**(2)** Computers and related equipment.

We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages; or

**k.** Water or steam.

## D. Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages

### 1. Debris Removal

**a.** We will pay your reasonable expense for the removal of:

**(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

**(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

**b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

**(1)** Your trees felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

**(2)** A neighbor's trees felled by a Peril Insured Against under Coverage **C;**

provided the trees:

**(3)** Damage a covered structure; or

**(4)** Do not damage a covered structure, but:

**(a)** Block a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

**(b)** Block a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

**2. Reasonable Repairs**

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

**(1)** Increase the limit of liability that applies to the covered property; or

**(2)** Relieve you of your duties, in case of a loss to covered property, described in **C.4.** under Section **I** – Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.** We will pay up to $500 for:

**(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

© Insurance Services Office, Inc., 2010

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

  **(1)** Use of a credit card, electronic fund transfer card or access device:

  **(a)** By a resident of your household;

  **(b)** By a person who has been entrusted with either type of card or access device; or

  **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

  **(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

  **(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

  **(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

  **(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A,** other than:

  **(1)** Earthquake; or

  **(2)** Land shock waves or tremors before, during or after a volcanic eruption.

  The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **Q.** Policy Period under Section **I** – Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

**a.** The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

**b.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**c.** This Additional Coverage – Collapse does not apply to:

  **(1)** A building or any part of a building that is in danger of falling down or caving in;

  **(2)** A part of a building that is standing, even if it has separated from another part of the building; or

  **(3)** A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**d.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

  **(1)** The Perils Insured Against named under Coverage **C;**

  **(2)** Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

  **(3)** Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

  **(4)** Weight of contents, equipment, animals or people;

  **(5)** Weight of rain which collects on a roof; or

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**e.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

**f.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

**a.** We cover:

**(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

**(2)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.** This coverage does not include loss:

**(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

**(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C,** other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

**(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

**(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

**(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

**(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

   © Insurance Services Office, Inc., 2010   HO 00 03 05 11

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C.**

This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

### A. Coverage A – Dwelling And Coverage B – Other Structures

1. We insure against direct physical loss to property described in Coverages **A** and **B.**

2. We do not insure, however, for loss:

   **a.** Excluded under Section **I** – Exclusions;

   **b.** Involving collapse, including any of the following conditions of property or any part of the property:

      **(1)** An abrupt falling down or caving in;

      **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

      **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above;

      except as provided in **E.8.** Collapse under Section **I** – Property Coverages; or

   **c.** Caused by:

      **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

         **(a)** Maintain heat in the building; or

         **(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

   **(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

      **(a)** Fence, pavement, patio or swimming pool;

      **(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

      **(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

      **(d)** Pier, wharf or dock;

   **(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

   **(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   **(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

      **(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

      **(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

    **(a)** Wear and tear, marring, deterioration;

    **(b)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

    **(c)** Smog, rust or other corrosion, or dry rot;

    **(d)** Smoke from agricultural smudging or industrial operations;

    **(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

    **(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

    **(g)** Birds, rodents or insects;

    **(h)** Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

    **(i)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

    **(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

    **(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** – Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

    This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

 © Insurance Services Office, Inc., 2010

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

**a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

**b.** This peril does not include loss caused by theft:

**(1)** Committed by an "insured";

**(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(3)** From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

**(4)** That occurs off the "residence premises" of:

**(a)** Trailers, semitrailers and campers;

**(b)** Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

**(c)** Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 90 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**12. Accidental Discharge Or Overflow Of Water Or Steam**

**a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

**b.** This peril does not include loss:

**(1)** To the system or appliance from which the water or steam escaped;

**(2)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

**(3)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

**(4)** Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

**c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**d.** Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**14. Freezing**

**a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, but only if you have used reasonable care to:

**(1)** Maintain heat in the building; or

**(2)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

**b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden And Accidental Damage From Artificially Generated Electrical Current**

This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

**SECTION I – EXCLUSIONS**

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**1. Ordinance Or Law**

Ordinance Or Law means any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section **I** – Property Coverages;

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion **A.1.** applies whether or not the property has been physically damaged.

**2. Earth Movement**

Earth Movement means:

**a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting.

This Exclusion **A.2.** applies regardless of whether any of the above, in **A.2.a.** through **A.2.d.,** is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.2.a.** through **A.2.d.,** is covered.

**3. Water**

This means:

**a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

**b.** Water which:

**(1)** Backs up through sewers or drains; or

**(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

**c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

**d.** Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this exclusion.

© Insurance Services Office, Inc., 2010

This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.,** is caused by an act of nature or is otherwise caused.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.,** is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **N.** Nuclear Hazard Clause under Section **I** – Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A**, **B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

**SECTION I – CONDITIONS**

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.** For more than the applicable limit of liability.

**B. Deductible**

Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

**1.** Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

**2.** If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

## C. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

**1.** Give prompt notice to us or our agent;

**2.** Notify the police in case of loss by theft;

**3.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages;

**4.** Protect the property from further damage. If repairs to the property are required, you must:

    **a.** Make reasonable and necessary repairs to protect the property; and

    **b.** Keep an accurate record of repair expenses;

**5.** Cooperate with us in the investigation of a claim;

**6.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**7.** As often as we reasonably require:

    **a.** Show the damaged property;

    **b.** Provide us with records and documents we request and permit us to make copies; and

    **c.** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

**8.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    **a.** The time and cause of loss;

    **b.** The interests of all "insureds" and all others in the property involved and all liens on the property;

    **c.** Other insurance which may cover the loss;

    **d.** Changes in title or occupancy of the property during the term of the policy;

    **e.** Specifications of damaged buildings and detailed repair estimates;

    **f.** The inventory of damaged personal property described in **6.** above;

    **g.** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

    **h.** Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages, stating the amount and cause of loss.

## D. Loss Settlement

In this Condition **D.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I** – Property Coverages. Covered property losses are settled as follows:

**1.** Property of the following types:

    **a.** Personal property;

    **b.** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

    **c.** Structures that are not buildings; and

    **d.** Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

**2.** Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

    **a.** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:

        **(1)** The limit of liability under this policy that applies to the building;

        **(2)** The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

        **(3)** The necessary amount actually spent to repair or replace the damaged building.

    If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

© Insurance Services Office, Inc., 2010

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

**E. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**F. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**G. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**H. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within two years after the date of loss.

**I. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**J. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**1.** Reach an agreement with you;

**2.** There is an entry of a final judgment; or

**3.** There is a filing of an appraisal award with us.

**K. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**L. Mortgage Clause**

**1.** If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

**2.** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

  **a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

  **b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

  **c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **F.** Appraisal, **H.** Suit Against Us and **J.** Loss Payment under Section **I** – Conditions also apply to the mortgagee.

**3.** If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

**4.** If we pay the mortgagee for any loss and deny payment to you:

  **a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

  **b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

**5.** Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**M. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**N. Nuclear Hazard Clause**

**1.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**2.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

**3.** This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**O. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**P. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**Q. Policy Period**

This policy applies only to loss which occurs during the policy period.

© Insurance Services Office, Inc., 2010

## R. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

## S. Loss Payable Clause

If the Declarations shows a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

## A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

## B. Coverage F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

**1.** To a person on the "insured location" with the permission of an "insured"; or

**2.** To a person off the "insured location", if the "bodily injury":

**a.** Arises out of a condition on the "insured location" or the ways immediately adjoining;

**b.** Is caused by the activities of an "insured";

**c.** Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

**d.** Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

## A. "Motor Vehicle Liability"

**1.** Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

**a.** Is registered for use on public roads or property;

**b.** Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

**c.** Is being:

**(1)** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

**(2)** Rented to others;

**(3)** Used to carry persons or cargo for a charge; or

**(4)** Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

**2.** If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

**a.** In dead storage on an "insured location";

**b.** Used solely to service a residence;

**c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

**(1)** Being used to assist a handicapped person; or

**(2)** Parked on an "insured location";

**d.** Designed for recreational use off public roads and:

**(1)** Not owned by an "insured"; or

**(2)** Owned by an "insured" provided the "occurrence" takes place:

**(a)** On an "insured location" as defined in Definition **B.6.a., b., d., e.** or **h.;** or

**(b)** Off an "insured location" and the "motor vehicle" is:

**(i)** Designed as a toy vehicle for use by children under seven years of age;

**(ii)** Powered by one or more batteries; and

**(iii)** Not built or modified after manufacture to exceed a speed of five miles per hour on level ground;

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

**(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

**(c)** Cross public roads at designated points to access other parts of the golfing facility; or

**(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

**1.** Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

**a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

**b.** Rented to others;

**c.** Used to carry persons or cargo for a charge; or

**d.** Used for any "business" purpose.

**2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

**a.** Is stored;

**b.** Is a sailing vessel, with or without auxiliary power, that is:

**(1)** Less than 26 feet in overall length; or

**(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

**c.** Is not a sailing vessel and is powered by:

**(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

**(a)** 50 horsepower or less and not owned by an "insured"; or

**(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

**(2)** One or more outboard engines or motors with:

**(a)** 25 total horsepower or less;

**(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

**(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

**(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

**(i)** You declare them at policy inception; or

**(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

  © Insurance Services Office, Inc., 2010  HO 00 03 05 11

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2. "Business"**

**a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

**b.** This Exclusion **E.2.** does not apply to:

**(1)** The rental or holding for rental of an "insured location";

**(a)** On an occasional basis if used only as a residence;

**(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

**(c)** In part, as an office, school, studio or private garage; and

**(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E – Personal Liability**

Coverage **E** does not apply to:

**1.** Liability:

  **a.** For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section II – Additional Coverages;

  **b.** Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

    **(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

    **(2)** Where the liability of others is assumed by you prior to an "occurrence";

    unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

  **a.** Workers' compensation law;

  **b.** Non-occupational disability law; or

  **c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

  **a.** Is also an insured under a nuclear energy liability policy issued by the:

    **(1)** Nuclear Energy Liability Insurance Association;

    **(2)** Mutual Atomic Energy Liability Underwriters;

    **(3)** Nuclear Insurance Association of Canada;

    or any of their successors; or

  **b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definition **5.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured" to:

  **a.** Repay; or

  **b.** Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

**G. Coverage F – Medical Payments To Others**

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

  **a.** Occurs off the "insured location"; and

  **b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

  **a.** Workers' compensation law;

  **b.** Non-occupational disability law; or

  **c.** Occupational disease law;

**3.** From any:

  **a.** Nuclear reaction;

  **b.** Nuclear radiation; or

  **c.** Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

  **d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II – ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

**A. Claim Expenses**

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

**3.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

**4.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**B. First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

**C. Damage To Property Of Others**

**1.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

**2.** We will not pay for "property damage":

**a.** To the extent of any amount recoverable under Section **I;**

**b.** Caused intentionally by an "insured" who is 13 years of age or older;

**c.** To property owned by an "insured";

**d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

**e.** Arising out of:

**(1)** A "business" engaged in by an "insured";

**(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

**(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This Exclusion **e.(3)** does not apply to a "motor vehicle" that:

**(a)** Is designed for recreational use off public roads;

**(b)** Is not owned by an "insured"; and

**(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**D. Loss Assessment**

**1.** We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

**a.** "Bodily injury" or "property damage" not excluded from coverage under Section **II** – Exclusions; or

**b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

**(1)** Is elected by the members of a corporation or association of property owners; and

**(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

**2.** Paragraph **I.** Policy Period under Section **II** – Conditions does not apply to this Loss Assessment Coverage.

**3.** Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

**a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

**b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

**4.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II – CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

 © Insurance Services Office, Inc., 2010

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

  **a.** The identity of the policy and the "named insured" shown in the Declarations;

  **b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

  **c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

**3.** Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

**4.** At our request, help us:

  **a.** To make settlement;

  **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

  **c.** With the conduct of suits and attend hearings and trials; and

  **d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage To Property Of Others under Section **II** – Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

**1.** The injured person or someone acting for the injured person will:

  **a.** Give us written proof of claim, under oath if required, as soon as is practical; and

  **b.** Authorize us to obtain copies of medical reports and records.

**2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section **II.**

**2.** No one will have the right to join us as a party to any action against an "insured".

**3.** Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

 © Insurance Services Office, Inc., 2010

## SECTIONS I AND II – CONDITIONS

### A. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of this policy; or

**2.** An amendatory endorsement.

### B. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

### C. Cancellation

**1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

**(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

**(2)** If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

### D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

### E. Assignment

Assignment of this policy will not be valid unless we give our written consent.

### F. Subrogation

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

### G. Death

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

    **a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

    **b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

© Insurance Services Office, Inc., 2010

*21-000157264*

CHIEF FINANCIAL OFFICER
**JIMMY PATRONIS**
STATE OF FLORIDA

---

CARLOS RODRIGUEZ

PLAINTIFF(S)

VS.

EVANSTON INSURANCE COMPANY

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT, DISCOVERY

| | |
|---|---|
| **CASE #:** | **2021-007464-CA-01** |
| **COURT:** | **ELEVENTH JUDICAL CIRCUIT COURT** |
| **COUNTY:** | **MIAMI-DADE** |
| **DFS-SOP #:** | 21-000157264 |

## EXHIBIT 2

## <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Monday, April 12, 2021 and a copy was forwarded by ELECTRONIC DELIVERY on Wednesday, April 14, 2021 to the designated agent for the named entity as shown below.

EVANSTON INSURANCE COMPANY
KATHLEEN STURGEON
10 PARKWAY NORTH
DEERFIELD, IL 60015

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

ERIKA PARDO
ATTORNEY
THE PARDO LAW FIRM, P.A.
7700 N KENDALL DRIVE, SUITE 804
MIAMI, FL 33156

KJ1

**COMPOSITE EXHIBIT 3** 



| | | |
|---|---|---|
| **COMPREHENSIVE CASE INFORMATION SYSTEM** | "We are agents of change and advocates of innovation. We apply appropriate strategic, technological, process and people solutions." | |
| Harvey Ruvin, Clerk of the Circuit and County Courts | | MIAMI-DADE COUNTY   CCIS |

*eportaluser*

Expand All

| Case Number | Filed Date | County | Case Type | Status | Contested | Jury Trial |
|---|---|---|---|---|---|---|
| 132021CA007464000001 [2021-007464-CA-01] | 03/26/2021 | MIAMI-DADE | | Open | No | Yes |

| Party Name | Party Type | Attorney | Bar ID |
|---|---|---|---|
| RODRIGUEZ, JOSE M | JUDGE | | |
| Diana, Thomas Robert | ATTORNEY | | |
| Erika L Pardo, Esq. | ATTORNEY | | |
| Evanston Insurance Company | DEFENDANT | DIANA, THOMAS ROBERT | 24935 |
| Rodriguez, Carlos | PLAINTIFF | PARDO, ERIKA LEIGH | 98719 |

**ockets**

Page : 1 [    ] [    ] [ 10 ▾ ]

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| | 11 | 05/04/2021 | Motion for Extension of Time | |
| | 10 | 05/04/2021 | Notice To Change Attorney Of Record Within Firm | |
| 📄 | 9 | 04/21/2021 | Notice of Appearance<br><br>Party: Diana, Thomas Robert; Evanston Insurance Company | 2 |
| | 8 | 04/02/2021 | Receipt:<br>  Receipt#:2590149      Amt Paid:$10.00<br>Name:ERIKA L PARDO, ESQ.<br>THE PARDO LAW FIRM PA 7700 N. KENDALL DRIVE SUITE<br>MIAMI FL 33156<br>Comment:<br>Allocation Code      Quantity    Unit    Amount<br>3139-Summons Issue Fee   1      $10.00       $10.00<br>Tender Type:E-Filing ACH      Tender Amt:$10.00<br>Receipt Date:04/02/2021<br>Register#:259      Cashier:EFilingUser | |
| 📄 | 7 | 04/01/2021 | ESummons 20 Day Issued<br><br>Party: Evanston Insurance Company | 1 |
| 📄 | 6 | 04/01/2021 | (M) 20 Day (C) Summons (Sub) Received | 1 |
| | 5 | 03/30/2021 | Receipt:<br>  Receipt#:2540022      Amt Paid:$401.00<br>Name:ERIKA L PARDO, ESQ.<br>THE PARDO LAW FIRM PA 7700 N. KENDALL DRIVE SUITE<br>MIAMI FL 33156<br>Comment:<br>Allocation Code      Quantity    Unit    Amount<br>3100-Circuit Filing Fee   1     $401.00     $401.00<br>Tender Type:E-Filing ACH      Tender Amt:$401.00<br>Receipt Date:03/30/2021<br>Register#:254      Cashier:EFilingUser | |
| 📄 | 4 | 03/26/2021 | Notice of Interrogatory | 7 |
| 📄 | 3 | 03/26/2021 | Request for Production | 4 |
| 📄 | 2 | 03/26/2021 | Complaint | 30 |

| Judge Assignment History | |
|---|---|

| Court Events | |
|---|---|

| Financial Summary | |
|---|---|

| Reopen History | |
|---|---|

*21-000157264*

CHIEF FINANCIAL OFFICER
**JIMMY PATRONIS**
STATE OF FLORIDA

CARLOS RODRIGUEZ

PLAINTIFF(S)

VS.

EVANSTON INSURANCE COMPANY

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT, DISCOVERY

| | |
|---|---|
| **CASE #:** | **2021-007464-CA-01** |
| **COURT:** | **ELEVENTH JUDICAL CIRCUIT COURT** |
| **COUNTY:** | **MIAMI-DADE** |
| **DFS-SOP #:** | 21-000157264 |

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Monday, April 12, 2021 and a copy was forwarded by ELECTRONIC DELIVERY on Wednesday, April 14, 2021 to the designated agent for the named entity as shown below.

EVANSTON INSURANCE COMPANY
KATHLEEN STURGEON
10 PARKWAY NORTH
DEERFIELD, IL 60015

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

Jimmy Patronis
Chief Financial Officer

ERIKA PARDO
ATTORNEY
THE PARDO LAW FIRM, P.A.
7700 N KENDALL DRIVE, SUITE 804
MIAMI, FL 33156

KJ1

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CARLOS RODRIGUEZ,                               CASE NO.: 2021-007464-CA-01

            Plaintiff,

vs.

EVANSTON INSURANCE COMPANY,

            Defendant.

_____ /

## CIVIL SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of Said State:

YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint as well as Interrogatories and Request for Production in this action on Defendant:

By serving:    EVANSTON INSURANCE COMPANY
               c/o Florida Chief Financial Officer as RA
               Service of Process Section
               P.O. Box 6200
               Tallahassee, FL 32314-6200

Each Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, to wit: ERIKA L. PARDO, ESQUIRE whose address is: THE PARDO LAW FIRM, P.A., 7700 N. Kendall Drive, Suite 802 Miami FL, 33156 within twenty (20) days after service of this summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED ON      4/1/2021     , 2021.

                              Harvey Ruvin as Clerk of said Court,

                              By: _____
                              Deputy Clerk (Court Seal)

RECEIVED AS STATUTORY REGISTERED AGENT on 12 April, 2021 and served on defendant or named party on 14 April, 2021 by the Florida Department of Financial Services

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CASE NO.:

CARLOS RODRIGUEZ,

      Plaintiff,

vs.

EVANSTON INSURANCE
COMPANY,

      Defendant.

_____/

## **COMPLAINT**

COMES NOW the Plaintiff, CARLOS RODRIGUEZ, by and through the undersigned counsel and hereby sue the Defendant, EVANSTON INSURANCE COMPANY, and as grounds therefore states as follows:

1. This is an action for damages not exceeding Thirty Thousand Dollars ($30,000.00), exclusive of interest, costs and attorney's fees, and is otherwise within the jurisdictional limits of this Court.

2. The Plaintiff is an individual who at all times material hereto was a resident of Miami-Dade County, Florida and are otherwise *sui juris*.

3. The Defendant is a Florida corporation, organized and existing under the laws of Florida, authorized to do business in Florida and conducting business in Miami-Dade County.

4. Venue is proper in Miami-Dade County, Florida because the contract which forms the subject matter of this lawsuit, was executed in Miami-Dade County, Florida and the subject property which forms the subject matter of this lawsuit, is located in Miami-Dade County, Florida.

5.   Plaintiff purchased a homeowners' insurance policy from the Defendant, Policy No. MKH00001221-00 (hereinafter the "Policy"). See Homeowners Policy Declarations attached hereto as **Exhibit "A"**.

6.   Plaintiff has paid all premiums due and owing under said Policy and the Policy was in full force and effect at all relevant times herein.

7.   Pursuant to the terms of the Policy, the Defendant agreed to provide insurance coverage to the Plaintiff's property located at 14572 SW 142nd Terrace, Miami, FL 33186 (the "Property").

8.   On or about November 9, 2020, Plaintiff suffered a covered loss as a result of tropical storm Eta causing direct, physical loss to the property due to wind and water damage (hereinafter the "loss").

9.   The damage is sudden and accidental and therefore a covered peril under the Policy.

10. Plaintiff timely notified Defendant of said loss and submitted a claim seeking coverage and insurance benefits under the Policy.

11. Defendant assigned claim number 20C7682 to the loss and investigated the claim.

12. The Plaintiff protected the Property from further damage, provided Defendant access to the Property and an opportunity to fully inspect the loss, and otherwise fully cooperated in the investigation of the claim and have performed all post-loss obligations to the best of their ability to recover under the Policy and/or said conditions have been waived by the Defendant.

13. Defendant agreed that the Plaintiff sustained a covered loss.

14. On or about January 25, 2021, the Defendant acknowledged coverage for the loss and issued a payment to Plaintiff based on its unilateral valuation, less the applicable deductible.

15. However, the damages to the Property as a result of said loss exceed Defendant's valuation and payments; as such, the Defendant has failed to fully pay for the Plaintiff's damages that are covered under the Policy.

16. All conditions precedent to obtaining payment of benefits under the Policy from the Defendant have been met, complied with, or otherwise waived.

## COUNT I - BREACH OF CONTRACT

Plaintiff re-allege paragraphs 1 through 16 above as if fully set forth herein.

17. This is an action against the Defendant for breach of contract for the Policy issued by Defendant to Plaintiff.

18. The Policy provides coverage for direct, physical loss to the Property as a result of the loss mentioned herein.

19. Defendant has a contractual and legal obligation to pay for damages incurred as a result of covered losses under the Policy and the Defendant owed a duty to the Plaintiff to fully compensate the Plaintiff for the covered loss.

20. The Defendant has breached the Policy by underpaying the Plaintiff for said loss and/or failing to provide full payment of benefits due and owing to Plaintiff under the Policy.

21. The Defendant has failed or refused to pay for all damages sustained by Plaintiff as a result the loss and Plaintiff has therefore sustained unpaid damages that are a covered loss under the Policy.

22. Plaintiff has been damaged by the Defendant failing to pay the full amount of said benefits available to the Plaintiff under the Policy.

23. Defendant's failure to pay the full amount of insurance proceeds due in Plaintiff's claim is contrary to the terms of the Policy.

24. Under the terms of the Policy, Defendant is liable to Plaintiff for the total amount of the loss, within the Policy limits of liability, less any applicable deductible.

25. As a result of the foregoing, Defendant has materially breached the Policy.

26. The Plaintiff has been obligated to retain the services of the undersigned attorney and are responsible for paying reasonable fees and costs for the services of the undersigned.  Plaintiff is entitled to recover attorney's fees and costs pursuant to Florida Statute §627.428.

WHEREFORE, the Plaintiff, CARLOS RODRIGUEZ, demand judgment against the Defendant, EVANSTON INSURANCE COMPANY, for all damages, interest allowed by law, costs and attorney's fees pursuant to §627.428 of the Florida Statutes, and any further relief this Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

**THE PARDO LAW FIRM, P.A.**
*Attorney for Plaintiff*
7700 N. Kendall Drive, Suite 802
Miami, FL 33156
Tel: (305) 421-6391
Fax: (305) 909-7437
Erika@thepardolawfirm.com
Eservice@thepardolawfirm.com

By:      /s/ Erika L. Pardo
         Erika L. Pardo, Esq.
         Florida Bar No. 98719

# EXHIBIT "A"

**Policy Number: MKH00001221-00**

Evanston Insurance Company
# (HO-3) Homeowner Declaration



MARKEL®

| Proposed Policy Term: 12 Months | Effective: 3/5/2020 | Expiration: 3/5/2021 |
|---|---|---|

**Insured Name and Mailing Address**
CARLOS RODRIGUEZ
14572 SW 142 TER

Miami, FL 33186

**Broker Name and Address**
SEBANDA INSURANCE CORP \ ANNET PASCUAL
6401 SW 40 ST
Miami, FL 33155
Email: annet@sebandainsurance.com   Phone:
3056650016

The Residence premise covered by this policy is located at the above address, unless otherwise stated:
14572 SW 142 Ter, Miami, FL 33186

Insurance is provided only with respect to the following Coverage(s) for which a Limit is shown and then subject to all conditions of this policy.

| **Policy Coverages** | **Policy Limits** | **Policy Premiums** | |
|---|---|---|---|
| A – Dwelling | $200,000 | Base Premium | $2,784.00 |
| B – Other Structures | $0 | | |
| C – Personal Property | $10,000 | | |
| D – Loss of Use | $10,000 | Fees | $250.00 |
| E – Personal Liability | $100,000 | Taxes | $156.73 |
| F – Medical Payments to others | $1,000 | **TOTAL DUE** | $3,190.73 |
| **Policy Deductibles:** | | | |
| (AOP) All Other Perils | $2,500 | | |
| Wind/Hail | 3% | | |
| Water | AOP | | |
| Theft | AOP | | |

**Optional Coverages:**

| | | | | | |
|---|---|---|---|---|---|
| Extended Replacement Cost | No | Personal Injury | No | Loss Assessment | $1,000 |
| Replacement Cost Cov C | Yes | Identity Restoration Expense | No | Limited Mold | No |
| Water Backup | No | Equipment Breakdown | Yes - $250 DED | Increased Limits on Business Property | No |
| Golf Cart Coverage | No | Animal Liability | No | Increased Ordinance | 10% |
| Roof Loss Settlement | See Policy | Water Damage Limitation | Yes | Personal Property Special Perils | No |

**First Mortgagee**
REGIONS MORTGAGE
PO BOX 18001
HATTIESBURG, MS 39404
Clause:
Loan Number: 3297109967

**Agent Name and Mailing Address**
Appalachian Underwriters, Inc
800 Oak Ridge Turnpike
Suite A-1000
Oak Ridge, TN 37830
Phone: 888-376-9633, opt 4



**Forms and Endorsements made part of this policy at the time of issuance:**
MPLH0154-0118, MPLCLAIMNOTICE-0715, MPLH0103-0117, Homeowners Declarations, HO 00 03 05 11, HO 23 86 05 13, MPLH0232-0716, HO 04 10 10 00, MPLH0125-0715, MPLH0152-0715, MPLH0100-0715, MPLH0112-0715, MPLH0113-0715, MPLH0115-0715, MPLH0120-0715, MPLH0122-0715, MPLH0123-0715, MPLH0132-0715, MPLH0133-0715, MIL 1214 09 07, MPLH0126-0216, MPLH0153-0316, HO 04 35 05 11, HO 04 77 10 00, MPLH0520-0519, MPLH0118-0715, MPLH0508-0519, MPLH0509-0519, MPLH0511-0519, MPLH0512-0519, MPLH0523-0519, MPLH0507-0519

This insurance is issued pursuant to the
Florida surplus lines law. Persons insured
by surplus lines carriers do not have the
protection of the Florida Insurance Guaranty
Act to the extent of any right of recovery for
the obligation of an insolvent unlicensed
insurer.

NO FLAT
CANCELLATIONS

Steven Malsy Clewland

**HOMEOWNERS
HO 00 03 05 11**

# HOMEOWNERS 3 – SPECIAL FORM

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

  **a.** Liability for "bodily injury" or "property damage" arising out of the:

    **(1)** Ownership of such vehicle or craft by an "insured";

    **(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

    **(3)** Entrustment of such vehicle or craft by an "insured" to any person;

    **(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

    **(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

  **b.** For the purpose of this definition:

    **(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

    **(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

    **(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

    **(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

  **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

  **b.** Any other activity engaged in for money or other compensation, except the following:

    **(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

    **(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

  **a.** You and residents of your household who are:

    **(1)** Your relatives; or

    **(2)** Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

  **b.** A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

    **(1)** 24 and your relative; or

**(2)** 21 and in your care or the care of a resident of your household who is your relative; or

**c.** Under Section **II:**

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in **5.a.** or **b.** "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to a "motor vehicle" to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person described in **5.a.** or **b.;** or

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence; and

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

**a.** A self-propelled land or amphibious vehicle; or

**b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

**a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

**b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means:

**a.** The one-family dwelling where you reside;

**b.** The two-, three- or four-family dwelling where you reside in at least one of the family units; or

**c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

© Insurance Services Office, Inc., 2010

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:

   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A.** Use of this coverage does not reduce the Coverage **A** limit of liability.

### C. Coverage C – Personal Property

1. Covered Property

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. Limit For Property At Other Locations

   a. Other Residences

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   (1) Moved from the "residence premises" because it is:

      (a) Being repaired, renovated or rebuilt; and

      (b) Not fit to live in or store property in; or

   (2) In a newly acquired principal residence for 30 days from the time you begin to move the property there.

   b. Self-storage Facilities

   Our limit of liability for personal property owned or used by an "insured" and located in a self-storage facility is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   (1) Moved from the "residence premises" because it is:

      (a) Being repaired, renovated or rebuilt; and

      (b) Not fit to live in or store property in; or

   (2) Usually located in an "insured's" residence, other than the "residence premises".

 © Insurance Services Office, Inc., 2010

### 3. Special Limits Of Liability

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

**a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

**b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

**c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

**e.** $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**f.** $2,500 for loss by theft of firearms and related equipment.

**g.** $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

**h.** $2,500 on property, on the "residence premises", used primarily for "business" purposes.

**i.** $1,500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to antennas, tapes, wires, records, disks or other media that are:

**(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

**(2)** In or upon a "motor vehicle".

**j.** $1,500 on portable electronic equipment that:

**(1)** Reproduces, receives or transmits audio, visual or data signals;

**(2)** Is designed to be operated by more than one power source, one of which is a "motor vehicle's" electrical system; and

**(3)** Is in or upon a "motor vehicle".

**k.** $250 for antennas, tapes, wires, records, disks or other media that are:

**(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

**(2)** In or upon a "motor vehicle".

### 4. Property Not Covered

We do not cover:

**a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles".

This includes a "motor vehicle's" equipment and parts. However, this Paragraph **4.c.** does not apply to:

**(1)** Portable electronic equipment that:

**(a)** Reproduces, receives or transmits audio, visual or data signals; and

**(b)** Is designed so that it may be operated from a power source other than a "motor vehicle's" electrical system.

**(2)** "Motor vehicles" not required to be registered for use on public roads or property which are:

**(a)** Used solely to service a residence; or

**(b)** Designed to assist the handicapped;

**d.** Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

**e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**f.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

© Insurance Services Office, Inc., 2010

**g.** Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section **I** – Property Coverages;

**h.** Property rented or held for rental to others off the "residence premises";

**i.** "Business" data, including such data stored in:

   **(1)** Books of account, drawings or other paper records; or

   **(2)** Computers and related equipment.

   We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages; or

**k.** Water or steam.

## D. Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages

### 1. Debris Removal

**a.** We will pay your reasonable expense for the removal of:

   **(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   **(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

**b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

   **(1)** Your trees felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

   **(2)** A neighbor's trees felled by a Peril Insured Against under Coverage **C;**

   provided the trees:

   **(3)** Damage a covered structure; or

   **(4)** Do not damage a covered structure, but:

      **(a)** Block a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

**(b)** Block a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

**2. Reasonable Repairs**

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

**(1)** Increase the limit of liability that applies to the covered property; or

**(2)** Relieve you of your duties, in case of a loss to covered property, described in **C.4.** under Section **I** – Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.** We will pay up to $500 for:

**(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

© Insurance Services Office, Inc., 2010

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

  **(1)** Use of a credit card, electronic fund transfer card or access device:

    **(a)** By a resident of your household;

    **(b)** By a person who has been entrusted with either type of card or access device; or

    **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

  **(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

  **(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

  **(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

  **(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A,** other than:

  **(1)** Earthquake; or

  **(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **Q.** Policy Period under Section **I** – Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

**a.** The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

**b.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**c.** This Additional Coverage – Collapse does not apply to:

  **(1)** A building or any part of a building that is in danger of falling down or caving in;

  **(2)** A part of a building that is standing, even if it has separated from another part of the building; or

  **(3)** A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**d.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

  **(1)** The Perils Insured Against named under Coverage **C;**

  **(2)** Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

  **(3)** Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

  **(4)** Weight of contents, equipment, animals or people;

  **(5)** Weight of rain which collects on a roof; or

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**e.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

**f.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

  **a.** We cover:

    **(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

    **(2)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

    **(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

  **b.** This coverage does not include loss:

    **(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

    **(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

  **c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C,** other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

  **a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

    **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

    **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

    **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

  **b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

  **c.** We do not cover:

    **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

    **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C.**

This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

### A. Coverage A – Dwelling And Coverage B – Other Structures

1. We insure against direct physical loss to property described in Coverages **A** and **B.**

2. We do not insure, however, for loss:

   **a.** Excluded under Section **I** – Exclusions;

   **b.** Involving collapse, including any of the following conditions of property or any part of the property:

      **(1)** An abrupt falling down or caving in;

      **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

      **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above;

   except as provided in **E.8.** Collapse under Section **I** – Property Coverages; or

   **c.** Caused by:

      **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

         **(a)** Maintain heat in the building; or

         **(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

   **(a)** Fence, pavement, patio or swimming pool;

   **(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

   **(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

   **(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

   **(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

   **(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion, or dry rot;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(g)** Birds, rodents or insects;

**(h)** Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

**(i)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** – Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

**a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

**b.** This peril does not include loss caused by theft:

**(1)** Committed by an "insured";

**(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(3)** From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

**(4)** That occurs off the "residence premises" of:

**(a)** Trailers, semitrailers and campers;

**(b)** Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

**(c)** Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 90 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**12. Accidental Discharge Or Overflow Of Water Or Steam**

**a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

**b.** This peril does not include loss:

**(1)** To the system or appliance from which the water or steam escaped;

**(2)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

**(3)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

**(4)** Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

**c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**d.** Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

 © Insurance Services Office, Inc., 2010

### 14. Freezing

**a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, but only if you have used reasonable care to:

**(1)** Maintain heat in the building; or

**(2)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

**b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

### 15. Sudden And Accidental Damage From Artificially Generated Electrical Current

This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

### 16. Volcanic Eruption

This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

### 1. Ordinance Or Law

Ordinance Or Law means any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section **I** – Property Coverages;

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion **A.1.** applies whether or not the property has been physically damaged.

### 2. Earth Movement

Earth Movement means:

**a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting.

This Exclusion **A.2.** applies regardless of whether any of the above, in **A.2.a.** through **A.2.d.,** is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.2.a.** through **A.2.d.,** is covered.

### 3. Water

This means:

**a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

**b.** Water which:

**(1)** Backs up through sewers or drains; or

**(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

**c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

**d.** Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this exclusion.

This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.,** is caused by an act of nature or is otherwise caused.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.,** is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **N.** Nuclear Hazard Clause under Section **I** – Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A**, **B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

**SECTION I – CONDITIONS**

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.** For more than the applicable limit of liability.

**B. Deductible**

Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

**1.** Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

**2.** If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

**C. Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

**1.** Give prompt notice to us or our agent;

**2.** Notify the police in case of loss by theft;

**3.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages;

**4.** Protect the property from further damage. If repairs to the property are required, you must:

    **a.** Make reasonable and necessary repairs to protect the property; and

    **b.** Keep an accurate record of repair expenses;

**5.** Cooperate with us in the investigation of a claim;

**6.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**7.** As often as we reasonably require:

    **a.** Show the damaged property;

    **b.** Provide us with records and documents we request and permit us to make copies; and

    **c.** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

**8.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    **a.** The time and cause of loss;

    **b.** The interests of all "insureds" and all others in the property involved and all liens on the property;

    **c.** Other insurance which may cover the loss;

    **d.** Changes in title or occupancy of the property during the term of the policy;

    **e.** Specifications of damaged buildings and detailed repair estimates;

    **f.** The inventory of damaged personal property described in **6.** above;

    **g.** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

    **h.** Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages, stating the amount and cause of loss.

**D. Loss Settlement**

In this Condition **D.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I** – Property Coverages. Covered property losses are settled as follows:

**1.** Property of the following types:

    **a.** Personal property;

    **b.** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

    **c.** Structures that are not buildings; and

    **d.** Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

**2.** Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

    **a.** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:

        **(1)** The limit of liability under this policy that applies to the building;

        **(2)** The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

        **(3)** The necessary amount actually spent to repair or replace the damaged building.

    If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

© Insurance Services Office, Inc., 2010

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

**E. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**F. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**G. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**H. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within two years after the date of loss.

**I. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**J. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**1.** Reach an agreement with you;

**2.** There is an entry of a final judgment; or

**3.** There is a filing of an appraisal award with us.

**K. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**L. Mortgage Clause**

**1.** If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

**2.** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

**a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

**b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

**c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **F.** Appraisal, **H.** Suit Against Us and **J.** Loss Payment under Section **I** – Conditions also apply to the mortgagee.

**3.** If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

**4.** If we pay the mortgagee for any loss and deny payment to you:

**a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

**b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

**5.** Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**M. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**N. Nuclear Hazard Clause**

**1.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**2.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

**3.** This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**O. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**P. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**Q. Policy Period**

This policy applies only to loss which occurs during the policy period.

## R. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

## S. Loss Payable Clause

If the Declarations shows a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

### A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

b. Is caused by the activities of an "insured";

c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

### A. "Motor Vehicle Liability"

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

a. Is registered for use on public roads or property;

b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

c. Is being:

(1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

(2) Rented to others;

(3) Used to carry persons or cargo for a charge; or

(4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

a. In dead storage on an "insured location";

b. Used solely to service a residence;

c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

(1) Being used to assist a handicapped person; or

(2) Parked on an "insured location";

d. Designed for recreational use off public roads and:

(1) Not owned by an "insured"; or

**(2)** Owned by an "insured" provided the "occurrence" takes place:

    **(a)** On an "insured location" as defined in Definition **B.6.a., b., d., e.** or **h.;** or

    **(b)** Off an "insured location" and the "motor vehicle" is:

        **(i)** Designed as a toy vehicle for use by children under seven years of age;

        **(ii)** Powered by one or more batteries; and

        **(iii)** Not built or modified after manufacture to exceed a speed of five miles per hour on level ground;

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

    **(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

        **(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

        **(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

        **(c)** Cross public roads at designated points to access other parts of the golfing facility; or

    **(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

### B. "Watercraft Liability"

**1.** Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

**a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

**b.** Rented to others;

**c.** Used to carry persons or cargo for a charge; or

**d.** Used for any "business" purpose.

**2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

**a.** Is stored;

**b.** Is a sailing vessel, with or without auxiliary power, that is:

    **(1)** Less than 26 feet in overall length; or

    **(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

**c.** Is not a sailing vessel and is powered by:

    **(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

        **(a)** 50 horsepower or less and not owned by an "insured"; or

        **(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

    **(2)** One or more outboard engines or motors with:

        **(a)** 25 total horsepower or less;

        **(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

        **(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

        **(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

            **(i)** You declare them at policy inception or

            **(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

### C. "Aircraft Liability"

This policy does not cover "aircraft liability".

### D. "Hovercraft Liability"

This policy does not cover "hovercraft liability".

© Insurance Services Office, Inc., 2010
**HO 00 03 05 11**

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2. "Business"**

**a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

**b.** This Exclusion **E.2.** does not apply to:

**(1)** The rental or holding for rental of an "insured location";

**(a)** On an occasional basis if used only as a residence;

**(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

**(c)** In part, as an office, school, studio or private garage; and

**(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E – Personal Liability**

Coverage **E** does not apply to:

**1.** Liability:

    **a.** For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** – Additional Coverages;

    **b.** Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

        **(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

        **(2)** Where the liability of others is assumed by you prior to an "occurrence";

    unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

    **a.** Is also an insured under a nuclear energy liability policy issued by the:

        **(1)** Nuclear Energy Liability Insurance Association;

        **(2)** Mutual Atomic Energy Liability Underwriters;

        **(3)** Nuclear Insurance Association of Canada;

    or any of their successors; or

    **b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definition **5.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured" to:

    **a.** Repay; or

    **b.** Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

**G. Coverage F – Medical Payments To Others**

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

    **a.** Occurs off the "insured location"; and

    **b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**3.** From any:

    **a.** Nuclear reaction;

    **b.** Nuclear radiation; or

    **c.** Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

    **d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II – ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

**A. Claim Expenses**

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

**3.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

**4.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**B. First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

**C. Damage To Property Of Others**

**1.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

**2.** We will not pay for "property damage":

**a.** To the extent of any amount recoverable under Section **I;**

**b.** Caused intentionally by an "insured" who is 13 years of age or older;

**c.** To property owned by an "insured";

**d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

**e.** Arising out of:

**(1)** A "business" engaged in by an "insured";

**(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

**(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This Exclusion **e.(3)** does not apply to a "motor vehicle" that:

**(a)** Is designed for recreational use off public roads;

**(b)** Is not owned by an "insured"; and

**(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**D. Loss Assessment**

**1.** We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

**a.** "Bodily injury" or "property damage" not excluded from coverage under Section **II** – Exclusions; or

**b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

**(1)** Is elected by the members of a corporation or association of property owners; and

**(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

**2.** Paragraph **I.** Policy Period under Section **II** – Conditions does not apply to this Loss Assessment Coverage.

**3.** Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

**a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

**b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

**4.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II – CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

  **a.** The identity of the policy and the "named insured" shown in the Declarations;

  **b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

  **c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

**3.** Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

**4.** At our request, help us:

  **a.** To make settlement;

  **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

  **c.** With the conduct of suits and attend hearings and trials; and

  **d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage To Property Of Others under Section **II** – Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

**1.** The injured person or someone acting for the injured person will:

  **a.** Give us written proof of claim, under oath if required, as soon as is practical; and

  **b.** Authorize us to obtain copies of medical reports and records.

**2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section **II.**

**2.** No one will have the right to join us as a party to any action against an "insured".

**3.** Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

© Insurance Services Office, Inc., 2010

**SECTIONS I AND II – CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of this policy; or

**2.** An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

**1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

**(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

**(2)** If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

    **a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

**b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

© Insurance Services Office, Inc., 2010

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CASE NO.:

CARLOS RODRIGUEZ,

      Plaintiff,

vs.

EVANSTON INSURANCE
COMPANY,

      Defendant.

_____/

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

COMES NOW, the Plaintiff, CARLOS RODRIGUEZ, by and through undersigned counsel, pursuant to Florida Rule of Civil Procedure 1.280 and 1.340, and hereby propounds the following Interrogatories to the Defendant to be answered under oath in within the time and manner prescribed by law.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on Defendant along with Summons and Complaint.

**THE PARDO LAW FIRM, P.A.**
*Attorney for Plaintiff*
7700 N. Kendall Drive, Suite 802
Miami, FL 33156
Tel: (305) 421-6391
Fax: (305) 909-7437
Erika@thepardolawfirm.com
Eservice@thepardolawfirm.com

By:   /s/ Erika L. Pardo
      Erika L. Pardo, Esq.
      Florida Bar No. 98719

## **DEFINITIONS**

- The term **"You"** and **"Your"** as used herein shall refer to the corporation or entity that is the named Defendant to whom these Interrogatories are directed, any subsidiaries, divisions, affiliated companies of the named Defendant, any employees, agents, representatives, officers, counsel or other persons who are acting or have acted on behalf of the named Defendant.

- The term **"Representatives"** as used herein shall mean any and all past, present, or current agents, employees, officers, or persons acting or purporting to act on behalf of the individual or entity being referred to.

- The term **"Document"** shall include the original and any and all drafts and copies of any writing, correspondence, records, tables, charts, drafts, schedules, reports, memoranda, notes, letters, messages, assignments, statements, orders, invoices, bills, checks, photographs, tape records, and all other data compilations from which information can be obtained.

- The term **"Identify"** when used in reference to a person means to provide the full name, title, company name, business address or present address sufficient for subpoena purposes, employer name, and when used in reference to a document means to provide the full title, type of document, date and name of person who authored or created such document.

1. Identify the person answering these interrogatories and anyone who assisted in answering same.

2. Please state how you became aware of the subject loss, the date you received notice of this loss, identify the person(s) who received that report on your behalf, and state the date and nature of the loss as it was initially reported.  Also, if you are alleging late notice as a defense to payment, explain how your investigation was prejudiced by the late notice.

3. Please identify every person who inspected the insured property or any part thereof and/or performed an investigation on your behalf in connection with the subject claim; and, as to each such inspection and/or investigation, state the date(s) it was performed, the scope or purpose, whether a report or summary was prepared and if so, whether a copy of the report or summary was provided to the Insured(s).

4. In addition to persons who inspected the insured premises on your behalf and were identified in the preceding interrogatory, identify every other person who in any way participated in or supervised on your behalf the investigation, evaluation, adjusting or handling of the subject claim, and specify the nature and time period of each such person's participation.

5. Describe the experience, training, educational background, and professional licenses held of each person who on behalf of the Defendant investigated, evaluated, supervised, reviewed or otherwise handled the Insured(s) claim.

6.  Identify all persons who are believed or known by you, your agents or your attorneys to have knowledge concerning any of the issues raised by the pleadings, and specify for each the subject matter about which the person has knowledge.

7.  Identify each and every person or company known to you who has knowledge about or possession, custody, or control of any estimate, photograph, drawing, model, plat, map, or other item pertaining to any fact or issue regarding this matter; and as to each, describe what document or item each person or company has and the date it was taken or prepared.

8.  Identify any and all persons from whom the Defendant obtained a statement, either oral, written or recorded, and state the date the statement was taken, whether it is an oral, written or recorded statement, and who is presently in possession of the statement.

9.  Please state the date you made a final coverage determination or decision in this claim; and, if a determination or decision was made more than ninety (90) days after initial notice of the claim, explain in detail the reason for the delay, identify any information or documents which you contend were not provided, your efforts to obtain that information or documentation, and why said information or documentation is necessary or material to making a determination and/or providing coverage for the Insured(s) damages sustained in the subject loss.

10. Please state what you consider to be the cause of the damage at issue in the subject claim or what caused the damage to the insured property; also, state the factual basis for your answer and identify any person(s) or document(s) that are the source of your information.

11. Without regard to any disagreement(s) regarding causation or coverage, state what you consider to be the amount or extent of damage at issue in the subject claim; also state the factual basis for your answer and identify any person(s) or document(s) that are the source of your information.

12. Did you pay any benefits in connection with the subject claim? If so, as to each such payment state the amount, the date it was issued, and the damage or loss it was intended to address.

13. Please state how and when you notified the Insured(s) of your decision to deny the claim or part of the claim and/or failure to pay the full amount of damages sought by the Insured(s) in this claim and your reason(s) for your denial or nonpayment and/or failure to pay the full amount of benefits sought by the Insured(s), and identify the person(s) who authorized such decision.

14. Please state the basis in the subject insurance policy for your failure to pay the entire amount of the Insured(s) claim which is the subject of this litigation; including, the exact section and paragraph number of each policy provision.

15. Please describe each document which you rely on for your denial of all or part of the subject claim and/or failure to pay the full amount of damages sought by the Insured(s) in this claim, including any reports or estimates that have been prepared by or on behalf of Defendant and which were relied on in approving or denying payment to the Insured(s).

16. Please list any and all estimates (including drafts) that were prepared by or on behalf of Defendant concerning the amount and/or scope of damage in regard to the Insured(s) claim which is the subject of this litigation, and include the date the estimate was prepared and identify the author.

17. Please describe all facts and circumstances giving rise to each of your defenses and affirmative defenses asserted in this matter, and identify all witnesses or persons who have knowledge of the basis for or facts and circumstances regarding each asserted defense.

18. Do you allege any failure on the part of the Insured(s) to properly mitigate the damages sustained in the subject loss?  If so, please describe what the Insured(s) failed to do, state the amount of the loss you attribute to any failure to mitigate damage, state the factual basis for your answer and identify any person or document that is the source of your information.

19. If you contend the Insured(s) in any way failed to comply with applicable post loss duties, conditions or other obligations pursuant to the subject policy of insurance concerning this loss/claim, please identify same and describe in detail how the Insured(s) failed to comply with the applicable post loss duty, condition, or obligation.

20. Please identify any and all documents submitted by the Insured(s) and/or on their behalf to the Defendant, in support of the subject loss and the damages sustained therein.

I have read the foregoing Answer to Interrogatories and being duly sworn upon oath, state that the foregoing Answers to Interrogatories are true and correct to the best of my knowledge and belief.

_____
Signature

_____
Printed Name

STATE OF FLORIDA

COUNTY OF _____

      The foregoing instrument was acknowledged before this _____ day of _____, 2021 by _____ who is personally known to me or who has produced _____ as identification.

_____
Notary Public Signature

_____
Notary's Printed Name

Seal:

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CASE NO.:

CARLOS RODRIGUEZ,

        Plaintiff,

vs.

EVANSTON INSURANCE
COMPANY,

        Defendant.

_____/

## PLAINTIFF'S REQUEST FOR PRODUCTION TO DEFENDANT

COMES NOW the Plaintiff, CARLOS RODRIGUEZ, by and through undersigned counsel, pursuant to Florida Rule of Civil Procedure 1.350, and hereby files the following Request for Production to Defendant and requests Defendant produce the documents and items set forth herein.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on the Defendant along with Summons and Complaint.

**THE PARDO LAW FIRM, P.A.**
*Attorney for Plaintiff*
7700 N. Kendall Drive, Suite 802
Miami, Florida 33156
Tel: (305) 421-6391/ Fax: (305) 909-7437
Erika@thepardolawfirm.com
Eservice@thepardolawfirm.com

By:   /s/ Erika L. Pardo
       Erika L. Pardo, Esq.
       Florida Bar No. 98719

1. A true and correct copy of all insurance policies issued by the Defendant to the Plaintiff(s) or assumed by the Defendant which provide coverage to the Plaintiff(s) herein, including declaration of coverage pages and any and all endorsements.

2. Any and all statements (written, oral or recorded) taken of the Plaintiff(s), their agents, and/or any person or entity, by the Defendant or its agents concerning the subject loss.

3. All transcripts of all Examinations Under Oath (E.U.O.) taken by Defendant or its agents in connection with the subject loss, as well as copies of all documents or materials marked as exhibits or reviewed with the witness during the E.U.O.

4. All Proofs of Loss, Sworn Statements and/or Affidavits received by the Defendant or its agents in connection with the subject loss.

5. All correspondence or documentation sent by Defendant or its representatives to the Plaintiff(s), their agents, or any person or entity on behalf of the Plaintiff(s), in connection with the subject loss.

6. All correspondence or documentation received by the Defendant or its representatives from the Plaintiff(s), their agents or any person or entity on behalf of the Plaintiff(s), in connection with the subject loss.

7. Any and all memoranda, notes, or other documentation which evidences any communications, including telephone calls, between the Defendant and/or its agents or employees and the Plaintiff(s) and/or their agents, concerning the subject matter of this litigation.

8. The entire claim file regarding the subject loss; not including, documents protected by the work product doctrine and/or attorney client privilege.

9. The entire underwriting file concerning the subject matter of this litigation.

10. Any and all written materials, including guidelines, instructions, procedures, and manuals concerning the Defendant's policy on claim handling, investigation, and evaluation pertaining to water damage claims, for the last two (2) years.

11. Any and all photographs, diagrams, drawings, sketches or other graphic representations taken or prepared by the Defendant, its agents or employees or on its behalf, concerning the Plaintiffs' property, prior to the subject loss as alleged in the Complaint.

12. Any and all photographs, diagrams, drawings, sketches or other graphic representations taken or prepared by the Defendant, its agents or employees or on its behalf, in connection with the subject loss.

13. Any and all inspection reports or other documentation prepared by the Defendant or on its behalf (including but not limited to documents prepared by engineers, plumbers, contractors, consultants or other professionals) regarding the cause and origin of the subject loss or damages at issue.

14. Any and all reports, estimates, proposals, or other materials concerning the scope and/or amount of damages to the subject property which Defendant or its agents relied on in denying the subject claim or any part thereof and/or its failure to pay for all damages or the full amount claimed by Plaintiff(s), in connection with the subject loss.

15. All inspection reports or other materials pertaining to the Plaintiff's property, other structures, or personal property, prepared by the Defendant or on its behalf, prior to insuring the subject property and/or prior to the subject loss.

16. Any and all correspondence, documentation, estimates, reports, photographs, videos, audio recordings, or other materials of any kind or nature concerning any prior insurance claim made by the Plaintiff(s) or by previous owners of the subject property, which were obtained and/or reviewed by the Defendant or its agents or otherwise used or relied upon, at any time during the course of the investigation or adjusting of the subject loss, which is the subject matter of this litigation.

17. Any and all checks or payments issued by the Defendant or its agents to the Plaintiff(s) and any person or entity, in connection with the subject loss.

18. Any and all documentation which supports any and all payments the Defendant made to Plaintiff(s) or which Defendant relied upon in issuing any and all payments to the Plaintiff(s), in connection with the subject loss.

19. Any and all documentation of any kind or nature to support the Defendant's denial of the subject claim or failure to pay the full amount claimed or any amount beyond any payment previously issued or Defendant's partial payment, in connection with the subject loss.

20. Any and all documentation relied upon by the Defendant or its agents as the basis for any and all exclusions and/or defenses raised by the Defendant.

21. Any and all documentation that supports Defendant's affirmative defenses raised in this litigation.

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CARLOS RODRIGUEZ,

        Plaintiff(s),

vs.                                              Case No.:  2021-007464-CA-01

EVANSTON INSURANCE COMPANY,

        Defendant(s).

_____/

### DEFENDANT'S NOTICE OF APPEARANCE AND DESIGNATION OF ELECTRONIC MAIL ADDRESS PURSUANT TO RULE 2.516

PLEASE TAKE NOTICE that the undersigned attorneys, Thomas R. Diana, Esquire, and Michael J. Rivero, Esquire, of Zinober Diana & Monteverde, P.A., hereby enter this Notice of Appearance as counsel of record for Defendant, EVANSTON INSURANCE COMPANY, in the above-styled cause and request that all copies of notices to the Defendant be sent to the addresses below.

The undersigned hereby designates, in accordance with Rule 2.516 of the Florida Rules of Judicial Administration, the following electronic mail addresses for service of all documents upon Defendants in this proceeding:

| | |
|---|---|
| Primary Email: | Tom@zinoberdiana.com |
| | MRivero@zinoberdiana.com |
| Secondary Email: | Gabby@zinoberdiana.com |
| | MScott@zinoberdiana.com |

*(Certificate of Service to follow on the next page)*

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of the foregoing pleading was sent by electronic mail on this 21st day of April, 2021, to Counsel for Plaintiff(s) listed below:

Erika L. Pardo, Esquire (FBN: 098719)
THE PARDO LAW FIRM, P.A.
7700 N. Kendall Drive, Suite 802
Miami, FL 33156
Phone: 305-421-6391
Fax:     305-909-7437
Email: Erika@thepardolawfirm.com
Email: Eservice@thepardolawfirm.com
Attorneys for Plaintiff(s)


**ZINOBER DIANA & MONTEVERDE, P.A.**


_____
Thomas R. Diana, Esquire (FBN: 024935)
E-Service:  Tom@zinoberdiana.com
E-Service:  Gabby@zinoberdiana.com
Michael J. Rivero, Esquire (FBN: 085326)
E-Service:  MRivero@zinoberdiana.com
E-Service:  MScott@zinoberdiana.com
150 Second Ave. N, Suite 1170
St. Petersburg, FL 33701
Phone: 727-498-2244
Fax:     727-498-8902
Attorneys for Defendant(s)

EXHIBIT 4



# OFFICE OF THE PROPERTY APPRAISER

## Detailed Report

Generated On : 5/5/2021

### Property Information

| | |
|---|---|
| Folio: | 30-5921-007-4100 |
| Property Address: | 14572 SW 142 TER<br>Miami, FL  33186-6796 |
| Owner | CARLOS R RODRIGUEZ JTRS<br>CONSUELO MARRERO PERERA JTRS<br>LUDIN HERNANDEZ MARSANA JTRS |
| Mailing Address | 14572 SW 142 TER<br>MIAMI, FL 33186 USA |
| PA Primary Zone | 5700 DUPLEXES - GENERAL |
| Primary Land Use | 0101 RESIDENTIAL - SINGLE FAMILY : 1 UNIT |
| Beds / Baths / Half | 4 / 2 / 0 |
| Floors | 1 |
| Living Units | 1 |
| Actual Area | 1,883 Sq.Ft |
| Living Area | 1,525 Sq.Ft |
| Adjusted Area | 1,746 Sq.Ft |
| Lot Size | 7,040 Sq.Ft |
| Year Built | 2000 |



### Assessment Information

| Year | 2020 | 2019 | 2018 |
|---|---|---|---|
| Land Value | $138,480 | $126,940 | $121,170 |
| Building Value | $147,083 | $148,899 | $142,020 |
| XF Value | $1,817 | $1,839 | $1,861 |
| Market Value | $287,380 | $277,678 | $265,051 |
| Assessed Value | $251,576 | $245,920 | $241,335 |

### Taxable Value Information

| | 2020 | 2019 | 2018 |
|---|---|---|---|
| **County** | | | |
| Exemption Value | $50,000 | $50,000 | $50,000 |
| Taxable Value | $201,576 | $195,920 | $191,335 |
| **School Board** | | | |
| Exemption Value | $25,000 | $25,000 | $25,000 |
| Taxable Value | $226,576 | $220,920 | $216,335 |
| **City** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $0 | $0 | $0 |
| **Regional** | | | |
| Exemption Value | $50,000 | $50,000 | $50,000 |
| Taxable Value | $201,576 | $195,920 | $191,335 |

### Benefits Information

| Benefit | Type | 2020 | 2019 | 2018 |
|---|---|---|---|---|
| Save Our Homes Cap | Assessment Reduction | $35,804 | $31,758 | $23,716 |
| Homestead | Exemption | $25,000 | $25,000 | $25,000 |
| Second Homestead | Exemption | $25,000 | $25,000 | $25,000 |

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional).

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

# OFFICE OF THE PROPERTY APPRAISER

Generated On : 5/5/2021

**Property Information**

**Folio:** 30-5921-007-4100

**Property Address:**   14572 SW 142 TER

## Roll Year **2020** Land, Building and Extra-Feature Details

| Land Information | | | | | |
|---|---|---|---|---|---|
| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |
| GENERAL | RU-2 | 5700 | Square Ft. | 4,500.00 | $108,000 |
| GENERAL | RU-2 | 5700 | Square Ft. | 2,540.00 | $30,480 |

| Building Information | | | | | | |
|---|---|---|---|---|---|---|
| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |
| 1 | 1 | 2000 | 1,883 | 1,525 | 1,746 | $147,083 |

| Extra Features | | | |
|---|---|---|---|
| Description | Year Built | Units | Calc Value |
| Wood Fence | 2000 | 110 | $1,461 |
| Patio - Concrete Slab | 2000 | 110 | $356 |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

# OFFICE OF THE PROPERTY APPRAISER

Generated On : 5/5/2021

**Property Information**

**Folio:** 30-5921-007-4100

**Property Address:**   14572 SW 142 TER

## Roll Year **2019** Land, Building and Extra-Feature Details

| Land Information | | | | | |
|---|---|---|---|---|---|
| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |
| GENERAL | RU-2 | 5700 | Square Ft. | 4,500.00 | $99,000 |
| GENERAL | RU-2 | 5700 | Square Ft. | 2,540.00 | $27,940 |

| Building Information | | | | | | |
|---|---|---|---|---|---|---|
| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |
| 1 | 1 | 2000 | 1,883 | 1,525 | 1,746 | $148,899 |

| Extra Features | | | |
|---|---|---|---|
| Description | Year Built | Units | Calc Value |
| Patio - Concrete Slab | 2000 | 110 | $361 |
| Wood Fence | 2000 | 110 | $1,478 |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

# OFFICE OF THE PROPERTY APPRAISER

Generated On : 5/5/2021

**Property Information**

**Folio:** 30-5921-007-4100

**Property Address:**   14572 SW 142 TER Miami, FL  33186-6796

## Roll Year **2018** Land, Building and Extra-Feature Details

| Land Information | | | | | |
|---|---|---|---|---|---|
| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |
| GENERAL | RU-2 | 5700 | Square Ft. | 4,500.00 | $94,500 |
| GENERAL | RU-2 | 5700 | Square Ft. | 2,540.00 | $26,670 |

| Building Information | | | | | | |
|---|---|---|---|---|---|---|
| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |
| 1 | 1 | 2000 | 1,883 | 1,525 | 1,746 | $142,020 |

| Extra Features | | | |
|---|---|---|---|
| Description | Year Built | Units | Calc Value |
| Wood Fence | 2000 | 110 | $1,496 |
| Patio - Concrete Slab | 2000 | 110 | $365 |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

# OFFICE OF THE PROPERTY APPRAISER

Generated On : 5/5/2021

**Property Information**

**Folio:** 30-5921-007-4100

**Property Address:**   14572 SW 142 TER

| Full Legal Description |
|---|
| ADVENTURE HOMES |
| PB 139-77 |
| LOT 18 BLK 11 |
| LOT SIZE 7040 SQ FT |
| F/A/U 30-5921-000-0013-0020 & |
| 30-5922-000-0090 |
| OR 19478-1011 012001 1 |
| COC 22887-3055 11 2004 6 |

| Sales Information | | | |
|---|---|---|---|
| Previous Sale | Price | OR Book-Page | Qualification Description |
| 02/29/2016 | $280,000 | 29987-3730 | Qual by exam of deed |
| 11/01/2004 | $70,380 | 22887-3055 | Other disqualified |
| 01/01/2001 | $134,900 | 19478-1011 | Sales which are qualified |
| 12/01/1998 | $3,146,000 | 18414-1369 | Deeds that include more than one parcel |
| 08/01/1991 | $8,799,000 | 15166-730 | Deeds that include more than one parcel |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

# EXHIBIT 5

---

Insured:   Carlos Rodriguez
Property:   14572 SW 142nd Terr
            Miami, FL 33186

**Claim Number:**                    **Policy Number:** MKH00001221-00            **Type of Loss:** Wind Damage

Date of Loss:   11/9/2020 12:00 AM           Date Received:
Date Inspected:                              Date Entered:

Price List:    FLMI8X_DEC20
               Restoration/Service/Remodel
Estimate:      2020-12-09-092103

**2020-12-09-092103**

**SKETCH1**

**Main Level**



| Open Area | | Height: Peaked |
|---|---|---|
| 991.54 SF Walls | | 448.73 SF Ceiling |
| 1,440.27 SF Walls & Ceiling | | 443.76 SF Floor |
| 49.31 SY Flooring | | 113.17 LF Floor Perimeter |
| 117.58 LF Ceil. Perimeter | | |

**Missing Wall - Goes to neither Floor/Ceiling**    7' 6" X 5'        **Opens into KITCHEN**

**Missing Wall - Goes to Floor**                 3' 8" X 8'        **Opens into KITCHEN**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 1. Contents - move out then reset - Extra large room | 1.00 EA | 0.00 | 136.43 | 0.00 | 27.28 | 163.71 |
| 2. Smoke detector - Detach & reset | 1.00 EA | 0.00 | 38.30 | 0.00 | 7.66 | 45.96 |
| 3. Ceiling fan - Detach & reset | 1.00 EA | 0.00 | 140.87 | 0.00 | 28.18 | 169.05 |
| 4. Recessed light fixture - Detach & reset entire unit | 8.00 EA | 0.00 | 82.93 | 0.00 | 132.68 | 796.12 |
| 5. Heat/AC register - Mechanically attached - Detach & reset | 3.00 EA | 0.00 | 13.62 | 0.00 | 8.18 | 49.04 |
| 6. Window blind - horizontal or vertical - Detach & reset | 5.00 EA | 0.00 | 33.13 | 0.00 | 33.14 | 198.79 |
| 7. TV Brackets - Wall or ceiling mounted - Detach & reset | 1.00 EA | 0.00 | 44.91 | 0.00 | 8.98 | 53.89 |
| 8. R&R Blown-in insulation - 10" depth - R26 | 64.00 SF | 0.86 | 0.87 | 2.37 | 22.62 | 135.71 |
| 9. R&R 5/8" drywall - hung, taped, ready for texture | 64.00 SF | 0.42 | 2.14 | 2.28 | 33.24 | 199.36 |
| 10. R&R Crown molding - 5 1/4" | 117.58 LF | 0.67 | 6.35 | 21.32 | 169.34 | 1,016.07 |
| 11. Mask and prep for paint - plastic, paper, tape (per LF) | 117.58 LF | 0.00 | 1.32 | 2.14 | 31.46 | 188.81 |
| 12. Floor protection - self-adhesive plastic film | 443.76 SF | 0.00 | 0.60 | 4.04 | 54.06 | 324.36 |
| 13. Texture drywall - heavy hand texture | 448.73 SF | 0.00 | 1.03 | 5.97 | 93.64 | 561.80 |
| 14. Texture drywall - smooth / skim coat | 991.54 SF | 0.00 | 1.38 | 9.02 | 275.46 | 1,652.81 |
| 15. Seal the walls and ceiling w/PVA primer - one coat | 1,440.27 SF | 0.00 | 0.57 | 6.05 | 165.42 | 992.42 |
| 16. Paint the walls and ceiling - two coats | 1,440.27 SF | 0.00 | 0.94 | 25.20 | 275.82 | 1,654.87 |
| 17. Seal & paint crown molding - two coats | 117.58 LF | 0.00 | 1.44 | 1.15 | 34.10 | 204.57 |
| 18. Seal & paint baseboard - two coats | 113.17 LF | 0.00 | 1.42 | 0.87 | 32.32 | 193.89 |

**CONTINUED - Open Area**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 19.  Final cleaning - construction - Residential | 443.76 SF | 0.00 | 0.19 | 0.00 | 16.86 | 101.17 |
| Totals:  Open Area | | | | 80.41 | 1,450.44 | 8,702.40 |



**Kitchen**  **Height: Sloped**

275.89 SF Walls           96.06 SF Ceiling
371.96 SF Walls & Ceiling    95.00 SF Floor
10.56 SY Flooring        35.33 LF Floor Perimeter
39.22 LF Ceil. Perimeter

**Missing Wall - Goes to neither Floor/Ceiling**    **7' 6" X 5'**        Opens into OPEN_AREA2
**Missing Wall - Goes to Floor**    **3' 8" X 8'**        Opens into OPEN_AREA2

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 20.  Contents - move out then reset | 1.00 EA | 0.00 | 45.48 | 0.00 | 9.10 | 54.58 |
| 21.  Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | 0.00 | 13.62 | 0.00 | 2.72 | 16.34 |
| 22.  Recessed light fixture - Detach & reset entire unit | 3.00 EA | 0.00 | 82.93 | 0.00 | 49.76 | 298.55 |
| 23.  Cold air return cover - Detach & reset | 1.00 EA | 0.00 | 18.60 | 0.00 | 3.72 | 22.32 |
| 24.  Window blind - horizontal or vertical - Detach & reset | 1.00 EA | 0.00 | 33.13 | 0.00 | 6.62 | 39.75 |
| 25.  R&R Crown molding - 5 1/4" | 39.22 LF | 0.67 | 6.35 | 7.11 | 56.50 | 338.94 |
| 26.  Mask and prep for paint - plastic, paper, tape (per LF) | 39.22 LF | 0.00 | 1.32 | 0.71 | 10.50 | 62.98 |
| 27.  Floor protection - self-adhesive plastic film | 95.00 SF | 0.00 | 0.60 | 0.86 | 11.58 | 69.44 |
| 28.  Texture drywall - heavy hand texture | 96.06 SF | 0.00 | 1.03 | 1.28 | 20.04 | 120.26 |
| 29.  Texture drywall - smooth / skim coat | 275.89 SF | 0.00 | 1.38 | 2.51 | 76.64 | 459.88 |
| 30.  Seal the walls and ceiling w/PVA primer - one coat | 371.96 SF | 0.00 | 0.57 | 1.56 | 42.72 | 256.30 |
| 31.  Paint the walls and ceiling - two coats | 371.96 SF | 0.00 | 0.94 | 6.51 | 71.22 | 427.37 |
| 32.  Seal & paint crown molding - two coats | 39.22 LF | 0.00 | 1.44 | 0.38 | 11.38 | 68.24 |
| 33.  Seal & paint baseboard - two coats | 35.33 LF | 0.00 | 1.42 | 0.27 | 10.10 | 60.54 |
| 34.  Final cleaning - construction - Residential | 95.00 SF | 0.00 | 0.19 | 0.00 | 3.62 | 21.67 |
| Totals:  Kitchen | | | | 21.19 | 386.22 | 2,317.16 |



**Hallway**                                                                    **Height: 8'**

| | | |
|---|---|---|
| 378.67 SF Walls | 61.76 SF Ceiling |
| 440.42 SF Walls & Ceiling | 61.76 SF Floor |
| 6.86 SY Flooring | 47.33 LF Floor Perimeter |
| 47.33 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 35.  Contents - move out then reset - Small room | 1.00 EA | 0.00 | 34.14 | 0.00 | 6.82 | 40.96 |
| 36.  Light fixture - Detach & reset | 2.00 EA | 0.00 | 39.55 | 0.00 | 15.82 | 94.92 |
| 37.  Smoke detector - Detach & reset | 1.00 EA | 0.00 | 38.30 | 0.00 | 7.66 | 45.96 |
| 38.  Thermostat - Detach & reset | 1.00 EA | 0.00 | 45.54 | 0.00 | 9.10 | 54.64 |
| 39.  Mask and prep for paint - plastic, paper, tape (per LF) | 47.33 LF | 0.00 | 1.32 | 0.86 | 12.68 | 76.02 |
| 40.  Floor protection - self-adhesive plastic film | 61.76 SF | 0.00 | 0.60 | 0.56 | 7.54 | 45.16 |
| 41.  Texture drywall - heavy hand texture | 61.76 SF | 0.00 | 1.03 | 0.82 | 12.88 | 77.31 |
| 42.  Texture drywall - smooth / skim coat | 378.67 SF | 0.00 | 1.38 | 3.45 | 105.22 | 631.23 |
| 43.  Seal the walls and ceiling w/PVA primer - one coat | 440.42 SF | 0.00 | 0.57 | 1.85 | 50.58 | 303.47 |
| 44.  Paint the walls and ceiling - two coats | 440.42 SF | 0.00 | 0.94 | 7.71 | 84.34 | 506.04 |
| 45.  Seal & paint crown molding - two coats | 47.33 LF | 0.00 | 1.44 | 0.46 | 13.74 | 82.36 |
| 46.  Seal & paint baseboard - two coats | 47.33 LF | 0.00 | 1.42 | 0.36 | 13.52 | 81.09 |
| 47.  Final cleaning - construction - Residential | 61.76 SF | 0.00 | 0.19 | 0.00 | 2.34 | 14.07 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Totals:  Hallway | | | | 16.07 | 342.24 | 2,053.23 |



**Bedroom 1**                                                                  **Height: 8'**

| | | |
|---|---|---|
| 314.67 SF Walls | 96.69 SF Ceiling |
| 411.35 SF Walls & Ceiling | 96.69 SF Floor |
| 10.74 SY Flooring | 39.33 LF Floor Perimeter |
| 39.33 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 48.  Contents - move out then reset - Large room | 1.00 EA | 0.00 | 68.21 | 0.00 | 13.64 | 81.85 |

**CONTINUED - Bedroom 1**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 49.  Window blind - horizontal or vertical - Detach & reset | 1.00 EA | 0.00 | 33.13 | 0.00 | 6.62 | 39.75 |
| 50.  Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | 0.00 | 13.62 | 0.00 | 2.72 | 16.34 |
| 51.  Light fixture - Detach & reset | 1.00 EA | 0.00 | 39.55 | 0.00 | 7.92 | 47.47 |
| 52.  Smoke detector - Detach & reset | 1.00 EA | 0.00 | 38.30 | 0.00 | 7.66 | 45.96 |
| 53.  R&R Blown-in insulation - 12" depth - R30 | 64.00 SF | 0.98 | 0.99 | 2.78 | 25.78 | 154.64 |
| 54.  R&R 5/8" drywall - hung, taped, ready for texture | 64.00 SF | 0.42 | 2.14 | 2.28 | 33.24 | 199.36 |
| 55.  Mask and prep for paint - plastic, paper, tape (per LF) | 39.33 LF | 0.00 | 1.32 | 0.72 | 10.52 | 63.16 |
| 56.  Floor protection - self-adhesive plastic film | 96.69 SF | 0.00 | 0.60 | 0.88 | 11.78 | 70.67 |
| 57.  Texture drywall - heavy hand texture | 96.69 SF | 0.00 | 1.03 | 1.29 | 20.18 | 121.06 |
| 58.  Texture drywall - smooth / skim coat | 314.67 SF | 0.00 | 1.38 | 2.86 | 87.42 | 524.52 |
| 59.  Seal the walls and ceiling w/PVA primer - one coat | 411.35 SF | 0.00 | 0.57 | 1.73 | 47.24 | 283.44 |
| 60.  Paint the walls and ceiling - two coats | 411.35 SF | 0.00 | 0.94 | 7.20 | 78.78 | 472.65 |
| 61.  Seal & paint crown molding - two coats | 39.33 LF | 0.00 | 1.44 | 0.39 | 11.40 | 68.43 |
| 62.  Seal & paint baseboard - two coats | 39.33 LF | 0.00 | 1.42 | 0.30 | 11.24 | 67.39 |
| 63.  Final cleaning - construction - Residential | 96.69 SF | 0.00 | 0.19 | 0.00 | 3.68 | 22.05 |

| Totals:  Bedroom 1 | | | | 20.43 | 379.82 | 2,278.74 |
|---|---|---|---|---|---|---|



**Bedroom 2**                                                                    **Height: 8'**

| 279.22 SF Walls | 99.17 SF Ceiling |
|---|---|
| 378.39 SF Walls & Ceiling | 99.17 SF Floor |
| 11.02 SY Flooring | 33.92 LF Floor Perimeter |
| 39.83 LF Ceil. Perimeter | |

**Missing Wall - Goes to Floor**          5' 11" X 6' 8"          **Opens into BEDROOM_2_CL**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 64.  Contents - move out then reset - Large room | 1.00 EA | 0.00 | 68.21 | 0.00 | 13.64 | 81.85 |
| 65.  Track for track lighting - Detach & reset | 4.00 LF | 0.00 | 7.67 | 0.00 | 6.14 | 36.82 |

**CONTINUED - Bedroom 2**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 66.  Fixture (can) for track lighting - Detach & reset | 4.00 EA | 0.00 | 12.32 | 0.00 | 9.86 | 59.14 |
| 67.  Window blind - horizontal or vertical - Detach & reset | 1.00 EA | 0.00 | 33.13 | 0.00 | 6.62 | 39.75 |
| 68.  Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | 0.00 | 13.62 | 0.00 | 2.72 | 16.34 |
| 69.  Smoke detector - Detach & reset | 1.00 EA | 0.00 | 38.30 | 0.00 | 7.66 | 45.96 |
| 70.  R&R Blown-in insulation - 12" depth - R30 | 96.00 SF | 0.98 | 0.99 | 4.17 | 38.66 | 231.95 |
| 71.  R&R 5/8" drywall - hung, taped, ready for texture | 96.00 SF | 0.42 | 2.14 | 3.43 | 49.82 | 299.01 |
| 72.  Mask and prep for paint - plastic, paper, tape (per LF) | 39.83 LF | 0.00 | 1.32 | 0.73 | 10.66 | 63.97 |
| 73.  Floor protection - self-adhesive plastic film | 99.17 SF | 0.00 | 0.60 | 0.90 | 12.08 | 72.48 |
| 74.  Texture drywall - heavy hand texture | 99.17 SF | 0.00 | 1.03 | 1.32 | 20.70 | 124.17 |
| 75.  Texture drywall - smooth / skim coat | 279.22 SF | 0.00 | 1.38 | 2.54 | 77.56 | 465.42 |
| 76.  Seal the walls and ceiling w/PVA primer - one coat | 378.39 SF | 0.00 | 0.57 | 1.59 | 43.46 | 260.73 |
| 77.  Paint the walls and ceiling - two coats | 378.39 SF | 0.00 | 0.94 | 6.62 | 72.46 | 434.77 |
| 78.  Seal & paint crown molding - two coats | 39.83 LF | 0.00 | 1.44 | 0.39 | 11.56 | 69.31 |
| 79.  Seal & paint baseboard - two coats | 33.92 LF | 0.00 | 1.42 | 0.26 | 9.70 | 58.13 |
| 80.  Final cleaning - construction - Residential | 99.17 SF | 0.00 | 0.19 | 0.00 | 3.76 | 22.60 |
| Totals:  Bedroom 2 | | | | 21.95 | 397.06 | 2,382.40 |
| Total: Main Level | | | | **160.05** | **2,955.78** | **17,733.93** |

**Roof**



### Roof1

| | |
|---|---|
| 2,578.62  Surface Area | 25.79  Number of Squares |
| 221.70  Total Perimeter Length | 56.40  Total Ridge Length |
| 89.99  Total Hip Length | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|

**CONTINUED - Roof1**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|

**NOTE: The pricing in this estimate for the removal and replacement of the roof (RFG) has been broken down into two separate categories; the first line item for the removal and the second line item for the replacement.**

   The purpose of this is to correct an error within the Xactimate system. When utilizing a combined line item for the removal and replacement of the roof, the Xactimate system currently uses an erroneous labor category for the removal of the roof. The Xactimate default labor category for roof removal is a general demolition laborer instead of a finish licensed roofer. The hourly unit pricing for a general demolition laborer is significantly lower than that of the hourly unit pricing for a licensed roofer laborer.

   Accordingly, our correction of this Xactimate error properly indemnifies the Insured for their loss. To be clear, no change in the Xactimate database pricing was made; rather, the proper labor category was selected to create a more accurate estimate.

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 81.  R&R Sheathing - plywood - 5/8" - treated | 1,031.45 SF | 0.56 | 3.96 | 117.69 | 955.96 | 5,735.80 |
| 82.  Bird stop - Eave closure strip for tile roofing - clay | 159.19 LF | 0.00 | 6.23 | 25.96 | 203.56 | 1,221.27 |
| 83.  R&R Ridge / Hip / Rake cap - tile roofing | 56.40 LF | 5.84 | 15.34 | 27.40 | 244.40 | 1,466.36 |
| 84.  Re-nailing of roof sheathing - complete re-nail | 2,578.62 SF | 0.00 | 0.39 | 3.61 | 201.86 | 1,211.13 |
| 85.  Roofing felt - 30 lb. | 25.79 SQ | 0.00 | 57.46 | 28.40 | 302.06 | 1,812.35 |
| 86.  Remove Roll roofing - hot mop application | 25.79 SQ | 72.13 | 0.00 | 0.00 | 372.04 | 2,232.27 |
| 87.  Roll roofing - hot mop application | 25.79 SQ | 0.00 | 224.71 | 124.40 | 1,183.94 | 7,103.61 |
| 88.  R&R Valley metal | 56.29 LF | 0.59 | 7.87 | 8.00 | 96.84 | 581.05 |
| 89.  R&R Drip edge/gutter apron | 221.70 LF | 0.33 | 3.57 | 14.59 | 175.86 | 1,055.08 |
| 90.  R&R Flashing - pipe jack - lead | 3.00 EA | 7.09 | 91.36 | 8.16 | 60.72 | 364.23 |
| 91.  R&R Flat roof exhaust vent / cap - gooseneck 8" | 3.00 EA | 9.05 | 110.99 | 5.67 | 73.18 | 438.97 |
| 92.  Remove Tile roofing - Concrete - "S" or flat tile | 25.79 SQ | 200.51 | 0.00 | 0.00 | 1,034.24 | 6,205.39 |
| 93.  Tile roofing - Concrete - "S" or flat tile | 29.65 SQ | 0.00 | 824.09 | 347.90 | 4,956.44 | 29,738.61 |
| Totals:  Roof1 | | | | 711.78 | 9,861.10 | 59,166.12 |
| Total: Roof | | | | **711.78** | **9,861.10** | **59,166.12** |
| Total: SKETCH1 | | | | **871.83** | **12,816.88** | **76,900.05** |

**general**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 94.  Provide box, packing paper & tape - large size | 20.00 EA | 0.00 | 4.42 | 2.12 | 17.68 | 108.20 |
| 95.  Provide box, packing paper & tape - medium size | 20.00 EA | 0.00 | 3.33 | 1.60 | 13.32 | 81.52 |
| 96.  On-Site Inventory, Packing, Boxing, Moving chrg - per hour | 20.00 HR | 0.00 | 32.61 | 15.65 | 130.44 | 798.29 |

**CONTINUED - general**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 97.  Add for HEPA filter (for negative air exhaust fan) | 1.00 EA | 0.00 | 186.50 | 12.25 | 39.76 | 238.51 |
| 98.  Negative air fan/Air scrubber (24 hr period) - No monit. | 6.00 DA | 0.00 | 70.00 | 0.00 | 84.00 | 504.00 |
| 99.  Dumpster load - Approx. 40 yards, 7-8 tons of debris | 1.00 EA | 836.00 | 0.00 | 0.00 | 167.20 | 1,003.20 |
| 100.  General clean - up | 10.00 HR | 0.00 | 32.62 | 0.01 | 65.24 | 391.45 |
| 101.  Taxes, insurance, permits & fees (Bid Item) | 1.00 EA | 0.00 | 1,000.00 | 0.00 | 0.00 | 1,000.00 |
| 102.  Residential Supervision / Project Management - per hour | 40.00 HR | 0.00 | 65.00 | 0.00 | 520.00 | 3,120.00 |
| 103.  Temporary toilet - Minimum rental charge | 1.00 EA | 0.00 | 110.00 | 0.00 | 22.00 | 132.00 |
| 104.  General Laborer - per hour | 40.00 HR | 0.00 | 33.34 | 0.00 | 266.72 | 1,600.32 |
| 105.  Moving van (21'-27') and equipment - per day | 2.00 EA | 0.00 | 180.00 | 0.00 | 72.00 | 432.00 |
| 106.  Off-site storage & insur. - climate controlled - per month | 1,000.00 SF | 0.00 | 1.85 | 44.40 | 370.00 | 2,264.40 |
| Totals:  general | | | | 76.03 | 1,768.36 | 11,673.89 |

**Labor Minimums Applied**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 107.  Heat, vent, & air cond. labor minimum | 1.00 EA | 0.00 | 101.65 | 0.00 | 20.34 | 121.99 |
| 108.  Finish hardware labor minimum | 1.00 EA | 0.00 | 106.27 | 0.00 | 21.26 | 127.53 |
| 109.  Water extract/remediation labor minimum | 1.00 EA | 0.00 | 128.66 | 0.00 | 25.74 | 154.40 |
| Totals:  Labor Minimums Applied | | | | 0.00 | 67.34 | 403.92 |
| **Line Item Totals: 2020-12-09-092103** | | | | **947.86** | **14,652.58** | **88,977.86** |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 2,556.55 | SF Walls | 835.27 | SF Ceiling | 3,391.82 | SF Walls and Ceiling |
| 829.25 | SF Floor | 92.14 | SY Flooring | 307.67 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 327.80 | LF Ceil. Perimeter |
| | | | | | |
| 829.25 | Floor Area | 913.81 | Total Area | 2,556.55 | Interior Wall Area |
| 1,819.50 | Exterior Wall Area | 175.83 | Exterior Perimeter of Walls | | |
| | | | | | |
| 2,578.62 | Surface Area | 25.79 | Number of Squares | 221.70 | Total Perimeter Length |
| 56.40 | Total Ridge Length | 89.99 | Total Hip Length | | |

### Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 73,377.42 |
| Material Sales Tax | 884.09 |
| Subtotal | 74,261.51 |
| Overhead | 7,326.29 |
| Profit | 7,326.29 |
| Laundering Tax | 63.77 |
| **Replacement Cost Value** | **$88,977.86** |
| **Net Claim** | **$88,977.86** |

### Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (7%) | Laundering Tax (2%) | Manuf. Home Tax (6%) | Storage Rental Tax (7%) |
|---|---|---|---|---|---|---|
| **Line Items** | | | | | | |
| | 7,326.29 | 7,326.29 | 884.09 | 63.77 | 0.00 | 0.00 |
| **Total** | | | | | | |
| | **7,326.29** | **7,326.29** | **884.09** | **63.77** | **0.00** | **0.00** |

## Recap by Room

**Estimate: 2020-12-09-092103**

**Area: SKETCH1**

**Area: Main Level**

| | | |
|---|---:|---:|
| **Open Area** | **7,171.55** | **9.77%** |
| **Kitchen** | **1,909.75** | **2.60%** |
| **Hallway** | **1,694.92** | **2.31%** |
| **Bedroom 1** | **1,878.49** | **2.56%** |
| **Bedroom 2** | **1,963.39** | **2.68%** |
| **Area Subtotal:  Main Level** | **14,618.10** | **19.92%** |

**Area: Roof**

| | | |
|---|---:|---:|
| **Roof1** | **48,593.24** | **66.22%** |
| **Area Subtotal:  Roof** | **48,593.24** | **66.22%** |
| **Area Subtotal:  SKETCH1** | **63,211.34** | **86.15%** |
| **general** | **9,829.50** | **13.40%** |
| **Labor Minimums Applied** | **336.58** | **0.46%** |
| **Subtotal of Areas** | **73,377.42** | **100.00%** |
| **Total** | **73,377.42** | **100.00%** |

## Recap by Category

| O&P Items | Total | % |
|---|---|---|
| CONT: GARMENT & SOFT GOODS CLN | 2,657.20 | 2.99% |
| CLEANING | 477.50 | 0.54% |
| CONTENT MANIPULATION | 352.47 | 0.40% |
| CONT: PACKING,HANDLNG,STORAGE | 360.00 | 0.40% |
| GENERAL DEMOLITION | 9,340.14 | 10.50% |
| DRYWALL | 4,397.02 | 4.94% |
| ELECTRICAL | 153.20 | 0.17% |
| FINISH CARPENTRY / TRIMWORK | 995.68 | 1.12% |
| FINISH HARDWARE | 151.18 | 0.17% |
| HEAT,  VENT & AIR CONDITIONING | 247.51 | 0.28% |
| INSULATION | 214.08 | 0.24% |
| LABOR ONLY | 3,933.60 | 4.42% |
| LIGHT FIXTURES | 1,251.71 | 1.41% |
| PAINTING | 6,235.85 | 7.01% |
| ROOFING | 40,500.08 | 45.52% |
| TEMPORARY REPAIRS | 110.00 | 0.12% |
| WINDOW TREATMENT | 265.04 | 0.30% |
| WATER EXTRACTION & REMEDIATION | 735.16 | 0.83% |
| O&P Items Subtotal | 72,377.42 | 81.34% |

| Non-O&P Items | Total | % |
|---|---|---|
| PERMITS AND FEES | 1,000.00 | 1.12% |
| Non-O&P Items Subtotal | 1,000.00 | 1.12% |
| O&P Items Subtotal | 72,377.42 | 81.34% |
| Material Sales Tax | 884.09 | 0.99% |
| Overhead | 7,326.29 | 8.23% |
| Profit | 7,326.29 | 8.23% |
| Laundering Tax | 63.77 | 0.07% |
| Total | 88,977.86 | 100.00% |





Main Level

