UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-21774-GAYLES/TORRES

**CARLOS RODRIGUEZ**,

    Plaintiff,

v.

**EVANSTON INSURANCE COMPANY**,

    Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant Evanston Insurance Company's Motion to Dismiss Plaintiff's Complaint for Lack of Standing or, Alternatively, for Failure to Join and Indispensable Party (the "Motion") [ECF No. 6]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is granted in part and denied in part.

### BACKGROUND

**I.    Factual Background**

This action stems from a payment dispute under an insurance policy that Plaintiff Carlos Rodriguez purchased from Defendant. On March 5, 2020, Defendant issued a homeowner's insurance policy (the "Policy"), [ECF No. 1-1 at 6], covering Plaintiff's property located at 14572 SW 142nd Terrace, Miami, Florida 33186 (the "Property"), *id.* at 2 ¶ 7. On November 9, 2020, Plaintiff's Property suffered direct, physical loss due to wind and water damage caused by Tropical Storm Eta. *Id.* at 2 ¶ 8. Plaintiff timely notified Defendant of the loss caused to the Property and

submitted a claim for coverage and insurance benefits under the Policy. *Id.* at 2 ¶ 10. Defendant initiated an investigation of the loss to the Property and, on January 25, 2021, acknowledged coverage for the loss sustained to the Property. *Id.* at 2 ¶¶ 11 & 14. As a result, Defendant issued Plaintiff a payment under the Policy based on its unilateral valuation of the loss and applicable deductibles. *Id.* at 2 ¶ 14.

## II.   Procedural History

On March 26, 2021, Plaintiff commenced this action against Defendant in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. [ECF No. 1-1]. The Complaint raises one count for breach of contract resulting from Defendant allegedly undervaluing the loss to Plaintiff's Property and underpaying Plaintiff as a result. *Id.* at 3–4. Plaintiff also seeks attorney's fees and costs pursuant to Florida Statute § 627.428(1). *Id.* at 4 ¶ 26. On May 11, 2021, Defendant removed this action based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. [ECF No. 1]. On May 18, 2021, Defendant filed the instant Motion based on lack of standing and failure to join an indispensable party. [ECF No. 6]. In its Motion, Defendant raises two bases for dismissing Plaintiff's Complaint. First, Defendant argues that Plaintiff lacks standing to bring this action because he executed an assignment of benefits to non-party Full Pro Restoration. [ECF No. 6 at 3–5]. Second, Defendant argues, in the alternative, that Full Pro Restoration is an indispensable party to this litigation because it "may be entitled to any insurance proceeds awarded to Plaintiff in this matter." *Id.* at 2, 5–7. On June 7, 2021, Plaintiff moved to remand this matter to state court, [ECF No. 8], which the Court denied on December 23, 2021, [ECF No. 13].

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994) (citations omitted). "A district court must have jurisdiction under at least one of the three types of subject-matter jurisdiction: (1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Butler v. Morgan*, 562 F. App'x 832, 834 (11th Cir. 2014) (per curiam) (citation omitted). "It is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction . . . ." *Kokkonen*, 511 U.S. at 377 (citations omitted).

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(1) can be based on a facial or factual challenge to the complaint. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). On a facial challenge, a court is required only to determine if the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction . . . ." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam)). In doing so, "the court must consider the allegations in the plaintiff's complaint as true." *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).[1] By contrast, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered." *McElmurray*, 501 F.3d at 1251 (quoting *Lawrence*, 919 F.2d at 1529). On a factual challenge, "no presumptive truthfulness attaches to [the] plaintiff's allegations," *Lawrence*, 919 F.2d at 1529 (quoting *Williamson*, 645 F.2d at 413), and the plaintiff bears the burden to prove the facts sufficient to establish subject matter jurisdiction, *see OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

---

[1] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Here, Defendant raises a factual attack to Plaintiff's Complaint because it contends that Plaintiff lacks standing to bring this action based on an assignment of benefits. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (finding that a motion to dismiss brought a factual attack "because it relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings"). Accordingly, this Court may properly consider evidence outside the pleadings in determining whether the Complaint should be dismissed.

## ANALYSIS[2]

Article III of the United States Constitution "restricts the jurisdiction of the federal courts to litigants who have standing to sue." *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016), *reh'g en banc denied*, 855 F.3d 1265 (11th Cir. 2017). "[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under [Fed. R. Civ. P.] 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). "For a party to have standing to bring a lawsuit, it must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). *See also id.* ("In plainer language, the plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it."). The "irreducible constitutional

---

[2] Because this action is based in diversity jurisdiction, the Court applies Florida substantive law. *See Erie R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938) (requiring federal courts in diversity actions to apply the *substantive* law of the state in which it sits). "In rendering a decision based on state substantive law, a federal court must 'decide the case the way it appears the state's highest court would.'" *Q.B.E. Ins. Corp. v. Jorda Enters. Inc.*, No. 10-CIV-21107, 2010 WL 11442644, at *2 (S.D. Fla. Aug. 18, 2010) (citation omitted).

minimum of standing" requires an "injury in fact" that is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted).

In its Motion, Defendant argues that Plaintiff lacks standing to sue because "Plaintiff assigned his benefits under the Policy to Full Pro Restoration upon execution of the [Assignment of Benefits] Agreement on December 2, 2020, and, as such, retained no rights under the Policy." [ECF No. 6 at 5]. Defendant attaches the "Agreement and Assignment of Insurance Rights for Non-Emergency Dry Out / Water Mitigation Services" (the "AOB Agreement") that Plaintiff and Full Pro Restoration entered into. [ECF No. 6-3]. The AOB Agreement contains an assignment provision, which states in relevant part:

> 2. **ASSIGNMENT:** Insured represents that he or she is the Insured. Insured hereby assigns and transfers to Full Pro [Restoration] any and all after-loss insurance rights, benefits, and causes of action under the above named property insurance policy for the above-referenced claim as they relate to only any and all non-emergency dry out/water mitigation services performed at the property. Insured understands that Insured retains any claim he/she has for construction or repair services and will be responsible for seeking benefits under his/her insurance policy for same, if applicable.

*Id.* at 2. Additionally, the AOB Agreement contains a statement in bold type prior to the parties' signatures, which states in relevant part:

> **YOU ARE AGREEING TO GIVE UP CERTAIN RIGHTS YOU HAVE UNDER YOUR INSURANCE POLICY TO A THIRD PARTY, WHICH MAY RESULT IN LITIGATION AGAINST YOUR CARRIER. PLEASE READ AND UNDERSTAND THIS DOCUMENT BEFORE SIGNING IT.**

*Id.* at 5. Here, the parties dispute the scope of the assignment language in the AOB Agreement and whether it strips Plaintiff of standing to bring this action. While Defendant argues that Plaintiff assigned all his benefits under the Policy to Full Pro Restoration, *see* [ECF No. 6 at 5], Plaintiff argues that it "intended to confer a partial assignment to Full Pro [Restoration] specifically limited

to the amount of services rendered by Full Pro [Restoration] to the Plaintiff's property in the subject claim," [ECF No. 14 at 8]. Thus, the parties' dispute requires the Court to interpret the language of the AOB Agreement.

"[T]he interpretation of [a contract]—including whether a provision is ambiguous—is a question of law to be determined by the court." *Café La Trova LLC v. Aspen Specialty Ins. Co.*, 519 F. Supp. 3d 1167, 1177 (S.D. Fla. 2021). "Under Florida law, if the terms of [a contract] are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning, and, unless an ambiguity exists, a court should not resort to outside evidence or the complex rules of construction to construe the contract." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996). *See also Change Cap. Partners Fund I, LLC v. OTI Fiber LLC*, No. 18-CIV-25329, 2019 WL 5549156, at *3 (S.D. Fla. Oct. 28, 2019) ("An assignment of a contract must be interpreted under the same guidelines."). Contract interpretation is "decided by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent," which "is derived from the objective meaning of the words used." *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014).

"An assignment is a transfer of all the interests and rights to the thing assigned. Following an assignment, the assignee 'stands in the shoes of the assignor' and the 'assignor retains no rights to enforce the contract' at all." *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1227 (S.D. Fla. 2009) (quoting *Leesburg Cmty. Cancer Ctr. v. Leesburg Reg'l Med. Ctr., Inc.*, 972 So. 2d 203, 206 (Fla. 5th DCA 2007)). "In construing assignments, the court must determine (1) exactly what has been assigned to make certain that the plaintiff-assignee is the real party in interest, and (2) that a valid assignment has been made." *Univ. Creek Assocs., II, Ltd. v. Boston Am. Fin. Grp., Inc.*, 100 F. Supp. 2d 1337, 1339 (S.D. Fla. 1998). Because the

parties' dispute the scope of the assignment language of the AOB Agreement—"exactly what has been assigned"—the Court must determine whether the AOB Agreement is a qualified or an unqualified assignment.[3] *See id.* "Where the terms of the assignment agreement are qualified, [] the assignment may be construed as being limited by its terms . . . ." *Change Cap. Partners Fund I, LLC*, 2019 WL 5549156, at *3 (alterations in original) (quoting *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-CIV-21113, 2007 WL 3232270, at *4 (S.D. Fla. Oct. 31, 2007)). However, where the terms of an assignment agreement are unqualified, the assignment "transfers to the assignee all the interest of the assignor under the assigned contract, [and] the assignor has no right to make any claim on the contract once the assignment is complete, unless authorized to do so by the assignee." *State Farm Fire & Cas. Co. v. Ray*, 556 So. 2d 811, 813 (Fla. 5th DCA 1990).

Here, a plain reading of the assignment language in the AOB Agreement indicates that Plaintiff and Full Pro Restoration entered into a qualified assignment agreement. While Plaintiff assigned "all after-loss insurance rights, benefits, and causes of action" to Full Pro Restoration, the assignment language specifically limits those "rights, benefits, and causes of action" to "only any and all non-emergency dry out/water mitigation services performed at the property." [ECF No. 6-3 at 2]. This is further supported by subsequent language in the assignment provision noting that Plaintiff "retains any claims he/she has for construction or repair services . . . ." *Id.* Similarly, the language in the AOB Agreement warns the assignor that they agree to "GIVE UP *CERTAIN RIGHTS*" under the Policy to a third party. *See id.* at 4 (emphasis added). Thus, Plaintiff does not have standing to bring suit against Defendant based on claims for "any and all non-emergency dry out/water mitigation services [Full Pro Restoration] performed at the property." [ECF No. 6-3 at

---

[3] Neither party disputes the validity of the AOB Agreement. *See* [ECF No. 6 at 5]; [ECF No. 14 at 8–9].

2]. Plaintiff does, however, have standing to pursue claims for all other damages that are not non-emergency dry out/water mitigation services performed by Full Pro Restoration at the Property.[4] Therefore, the Motion shall be granted in part and denied in part.[5]

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Evanston Insurance Company's Motion to Dismiss Plaintiff's Complaint for Lack of Standing or, Alternatively, for Failure to Join and Indispensable Party, [ECF No. 6], is **GRANTED in part** and **DENIED in part**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of March, 2022.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[4] In its Notice of Removal, [ECF No. 1], Defendant attached a line-item estimate Plaintiff received from Full Pro Restoration to establish the amount-in-controversy element of diversity jurisdiction, *see* [ECF No. 1-5]. However, the Court cannot determine at this stage of the litigation which of those charges in the line-item estimate are affected by the assignment language in the AOB Agreement. Such determinations are better made with the benefit of discovery and on summary judgment.

[5] Defendant also brings a failure to join an indispensable party argument in the alternative based on Federal Rule of Civil Procedure 12(b)(7). However, because the Court finds that Plaintiff has standing to sue on those damages not affected by the AOB Agreement, it need not address Defendant's alternative argument.